Robert Patrick GLYNN

v.

Jean M. MESLIN.

No. 87–145 Appeal.

Supreme Court of Rhode Island.

Oct. 22, 1987.

Mitchell S. Riffkin, Warwick, for plaintiff.

Juan Soez Burgos, Rhode Island Legal Services, Providence, for defendant.

## OPINION

KELLEHER, Justice.

This dispute involves an interstate tug of war concerning which one of two single parents will have custody of their four-year-old son. This controversy, which was heard by a Family Court justice, involves certain provisions of G.L. 1956 (1981 Reenactment) chapter 14 of title 15, better known as Rhode Island's version of the Uniform Child Custody Jurisdiction Act (UCCJA). The father is the appealing party.

The record indicates that the son was born in mid-May 1983 at a time when the litigants were living in Long Island, New York. In June 1985 the father was of the opinion that New York was not a proper place to bring up the couple's son. Consequently, he and the son came to Rhode Island and took up residence in Cranston at the home of the father's parents. A month later, in July 1985, the child's mother, who had been working in New York, came to Cranston and was reunited with her son and his father. According to the father, sometime in September 1986 the mother informed him that she and their child were returning to New York, where they would visit with her parents. The visit became somewhat extended and in due course the mother notified the father that she and their son would not be returning to Rhode Island.

On two separate occasions the father visited with his son in New York and subsequently brought him to Rhode Island, where he stayed with the paternal grandparents for approximately two weeks. However, on March 16, 1987, the father drove to New York with his mother, went to the home of the child's aunt, gathered up the four-year-old, ran back to the awaiting vehicle, and returned to Rhode Island.

Immediately after the abduction both parties sought judicial assistance. On March 18, 1987, the father filed a petition in Rhode Island seeking "emergency relief" pursuant to the pertinent terms of the UCCJA. The record indicates that on March

17 at 7:20 p.m., a Family Court justice issued an ex parte restraining order awarding temporary custody of the four-year-old to the father and restraining the mother from pursuing judicial relief in New York. However, on March 19, the mother sought the assistance of the New York Family Court then sitting in Suffolk County. A justice of that court responded to the mother's petition by awarding her temporary legal custody of the child and directing the father to show cause why the temporary order should not be made permanent.

The father's petition for emergency relief came on for hearing in Rhode Island before a Family Court justice on April 7, 1987. Appearing on behalf of the father were his father and his mother. The mother, her sister, and a friend of the mother's testified in opposition to the petition. The father explained to the trial justice that his hit-and-run tactics of March 16, 1987 were motivated by his belief that "New York is a bad environment [with] a lot of crime [and] drugs and he's hanging around a motorcycle gang."

The mother's friend told the trial justice that the mother had informed her that she and the four-year-old had left Rhode Island in 1986 and returned to New York. The witness testified that "she [the child's mother] was fearing for her life. She was fearing for the baby's life because of problems that she was having at home."

There is testimony that would indicate that both the father and the mother had been involved with drugs. In fact, the father conceded that while in Rhode Island he had sought counseling at a drug-treatment facility.

Earlier in *Pratt v. Pratt*, 431 A.2d 405 (R.I. 1981), this court observed that the Legislature had adopted the UCCJA for the avowed purpose of avoiding jurisdictional competition and conflict with courts of other states in matters of child custody. This legislation undoubtedly also seeks to avoid forum shopping and to prevent parental kidnapping in child-custody matters.

Here, the trial justice characterized the father's conduct in taking the four-year-old from his aunt's New York apartment as child snatching. He also ruled that no emergency situation existed that created a necessity to protect the child from any mistreatment or abuse. He noted that New York had actually taken jurisdiction of the case when, on March 19, 1987, a show-cause order was issued to the father directing him to appear in New York and offer evidence on the mother's request for custody of the four-year-old. He also emphasized that the child's significant connections were with the State of New York rather than the State of Rhode Island. The record is clear that the child has spent most of his life in New York. In speaking of the child's long contact with New York, the trial justice demonstrated an awareness of § 15–14–4, which sets out the various criteria that are to be considered by the Family Court in determining whether it should exercise jurisdiction in a child-custody dispute, either by way of an original custody decree or a decree seeking modification of a previous order.

Before us, counsel for the father is critical of the trial justice's refusal to consider an offer of proof about what a clinical psychologist would offer as testimony regarding the child's "best interest." Counsel, in making this offer, informed the trial justice that the psychologist's testimony would satisfy the requirements of § 15–14–4(a)(2), which refers to a child's best interest and authorizes an award of custody because the child and the parents have significant connections to Rhode Island or because substantial evidence is available in Rhode Island concerning the child's present or future care, protection, training, and personal relationships. The father and his counsel apparently have overlooked the fact that they were seeking emergency relief that is authorized only by § 15–14–4(a)(2)(ii).

In discussing emergency jurisdiction, the drafters of the UCCJA have cautioned that "[t]his extraordinary jurisdiction is reserved for extraordinary circumstances." Unif. Child Custody Jurisdiction Act § 3, 9 U.L.A. 124 (1979). Another authority has observed that in emergency-jurisdiction disputes "[s]ubstantial harm to the child * * *

must be shown and mere allegations that the best interest or welfare of the child require a transfer to the resident parent is insufficient." 1 McCahey, Kaufman, Kraut and Zett, *Child Custody & Visitation Law and Practice*, § 4.04[5], at 4–86 (1986).

█ Here the father had the burden of proving that a real emergency made the March 16, 1987 abduction necessary. However, a parent's self-serving statements are not sufficient to confer emergency jurisdiction. *Young v. District Court*, 194 Colo. 140, 570 P.2d 249 (1977).

█ Although the trial justice classified the March 1987 taking as child snatching, he declined to exercise jurisdiction citing as his authority § 15–14–9(a) which provides that if one seeking initial custody has wrongfully taken a child from another state or is engaged in similar reprehensible conduct, the trial court may decline to exercise jurisdiction if it appears to be just and proper in the circumstances.

Finally, the father has argued that since there was no custodial decree, his removal of the four-year-old cannot be considered " 'wrongful.' " However, in 1 McCahey, *supra*, § 4.08[4][b] at 4–163, the authors point out that the courts are not consistent in their interpretations of a " 'wrongful taking' " or " 'similar reprehensible conduct.' " Many courts have held that there is no wrongful taking in circumstances in which the child is removed prior to the commencement of any custody proceeding or entry of a custody decree. The treatise emphasizes, however, that a trial justice can decline to exercise jurisdiction in a situation in which a child is present in the state as a result of child snatching.

It is important to note that the question of whether jurisdiction exists pursuant to the act is distinct from the question of whether it should be exercised. *Johnson v. District Court*, 654 P.2d 827 (Colo. 1982). Even if a determination that jurisdiction exists is made, the court may decline to exercise jurisdiction or it may stay the proceedings upon the condition that custody proceedings be initiated in another state.

Here the trial justice's judicial restraint is commendable and is supported by the evidentiary facts and the pertinent law. *See* § 15–14–7. We concur in his belief that the bulk of the evidence in this dispute relates to incidents that took place in the Empire State and that most of the witnesses who will testify reside in that area. Undoubtedly, questions of credibility exist that demand the presence of all those who may offer relevant evidence concerning the welfare of the four-year-old. The father may have his day in court, but it will be in New York rather than in Rhode Island.

The father's appeal is denied. The order appealed from is affirmed, and the stay previously granted by this court is vacated. The case is remanded to the Family Court.