121 Cal.Rptr.2d 897 (2002)
100 Cal.App.4th 101
In re C.T., a Person Coming Under the Juvenile Court Law.
San Diego County Health and Human Services Agency, Plaintiff and Respondent,
v.
Rodney T. et al., Defendants and Appellants.
No. D039130.
Court of Appeal, Fourth District, Division One.
July 16, 2002.
*901 Linda M. Fabian, under appointment by the Court of Appeal, for Defendant and Appellant Rodney T.
Alice C. Shotton, under appointment by the Court of Appeal, for Defendant and Appellant Leslie M.
John J. Sansone, County Counsel, Susan Strom, Chief Deputy County Counsel, and Katharine R. Bird, Senior Deputy County Counsel, for Plaintiff and Respondent.
Andrea R. St. Julian, San Diego, under appointment by the Court of Appeal, for Minor.
McDONALD, J.
These appeals arise from the court's application of the Uniform Child Custody Jurisdiction and Enforcement Act (the Act) (Fam.Code, § 3400 et seq.)[1] during a Welfare and Institutions Code section 300 (hereafter section 300) proceeding on be-half of seven-year-old C. T. C.'s parents, Rodney T. and Leslie M., separately appeal the court's order placing C. with Leslie and terminating its dependency jurisdiction over C. Rodney contends the true finding that C. is a person described by section 300 and the order placing C. with Leslie must be reversed because they are findings and an order the court was not authorized to make under the Act. He also contends the court did not comply with the Act's procedural requirements. Leslie contends the court should not have terminated its dependency jurisdiction over C. Because we conclude the court was not authorized under the Act to make the challenged finding, we reverse that finding. However, because the material evidence introduced to support the finding supports an order the court was authorized to make under the Act, we affirm the order placing C. with Leslie and terminating the juvenile court's jurisdiction over C.

FACTUAL AND PROCEDURAL BACKGROUND
In 1994 C. was born in Arkansas to Leslie and Rodney. In 1996 they separated. In 1998 an Arkansas state court granted Rodney primary physical custody of C. and approved Leslie's visitation with C. every other weekend and three weeks in the summer.
During C.'s July 2001 summer visit with Leslie in California, C. told her stepfather that while in Rodney's custody in Arkansas he had sexually molested her. As a result of C.'s disclosure, Leslie sought a restraining order in the California family court to retain C. in California and prevent her return to Rodney's custody in Arkansas. A temporary restraining order was issued in mid-July 2001. The continued order to show cause hearing for a permanent *902 restraining order was scheduled in the family court for later in the month of August and the family court advised the Arkansas court California was assuming emergency jurisdiction over C.
Before the order to show cause hearing set for late August, the San Diego County Health and Human Services Agency (the Agency) filed a section 300 petition on C.'s behalf in the California juvenile court, alleging she had been sexually abused by Rodney. At the detention hearing held the same day, the juvenile court found the Agency had made a prima facie showing C. is a person described by section 300, subdivision (d)[2] and declared it was exercising emergency jurisdiction over her under the Act (§ 3424, subd. (a)). The court gave the social worker discretion to detain C. in Leslie's home. The record does not reflect further proceedings in the California family court.
In September 2001 Rodney asked the juvenile court to hold an evidentiary hearing to determine whether the court was properly taking emergency jurisdiction over C. under the Act. The court declined to do so and set a dependency jurisdictional hearing to determine whether C. was a person described by section 300.
In October 2001 the court made a true finding that C. was a person described in section 300, subdivision (d). Shortly thereafter, the court contacted the Arkansas court, which "refused to allow [the California] court to have further jurisdiction over the matter," and requested the matter be transferred to Arkansas. The California court did not tape record, or have a court reporter present during, the conversation with the Arkansas court. The California court agreed to provide the Arkansas court with the file and the transcript from the section 300 dependency jurisdictional hearing, and the Arkansas court agreed that C.'s custody would remain with Leslie. In November the California court placed C. with Leslie pending further order of the Arkansas court, to which it sent a copy of the file and transcripts, and terminated the California court's jurisdiction over C.

DISCUSSION

I

PROCEDURAL REQUIREMENTS OF THE ACT
Rodney contends the true finding that C. was a minor described in section 300, subdivision (d) and the order placing C. with Leslie pending further order of the Arkansas court should be reversed because a true finding under section 300 is not authorized by the Act, and the placement order based on that finding is therefore not authorized by the Act. He also contends the court erred by not communicating with the court in Arkansas immediately after the filing of the section 300 petition.

A. Orders of Limited and Temporary Duration
In 1968, concern over parents engaging in forum shopping to gain favorable custody decisions led the National Conference of Commissioners on Uniform State Laws and the American Bar Association to approve the Uniform Child Custody Jurisdiction Act (UCCJA). (9 West's U. Laws *903 Ann. (1999) Uniform Child Custody Jurisdiction Act, Prefatory Note, pp. 262-263.) California adopted the UCCJA and codified it in former Civil Code section 5150 et seq., which became effective in January 1974. (Former Civ.Code § 5150.) Its purpose was to "[avoid] jurisdictional competition and conflict, [promote] interstate cooperation, [litigate] custody where child and family have closest connections, [discourage] continuing conflict over custody, [deter] abductions and unilateral removals of children, [avoid] relitigation of another state's custody decisions, and [promote] exchange of information and other mutual assistance between courts of sister states." (Kumar v. Superior Court (1982) 32 Cal.3d 689, 695, 186 Cal.Rptr. 772, 652 P.2d 1003.)
In 1997, the UCCJA was revised and the Act was adopted. (9 West's U. Laws Ann. (1999) Uniform Child Custody Jurisdiction and Enforcement Act, Prefatory Note, pp. 649-650.) The Act was adopted in California, effective January 1, 2000, and codified in Family Code section 3400 et seq. (9 West's U. Laws Ann. (2002 supp.) Uniform Child Custody Jurisdiction and Enforcement Act, p. 53.) Twenty-seven states, including Arkansas, and the District of Columbia have adopted the Act. (Ibid.) The Act is the exclusive method of determining the proper forum in custody disputes involving other jurisdictions and governs juvenile dependency proceedings. (§§ 3402, subd. (c), 3421, 3423, 3424, subd. (a); In re Nada R. (2001) 89 Cal.App.4th 1166, 1173, 108 Cal.Rptr.2d 493.)
All parties here agree the Act applied and the California court was required to follow the provisions of the Act when presented with a child custody dispute subject to a sister state custody order. To resolve Rodney's assertion the court acted improperly by making a true finding that C. was a person described in section 300, subdivision (d), we examine the procedure set forth in the Act applicable to the assertion of jurisdiction over a child who is the subject of an existing sister state custody order and for whom the Agency has filed a dependency petition.
Section 3424, subdivisions (a), (c) and (d) contain the basic provisions of the Act applicable to this case:
"(a) A court of this state has temporary emergency jurisdiction if the child is present in this state and ... it is necessary in an emergency to protect the child because the child ... is subjected to, or threatened with, mistreatment or abuse.
"(c) If there is a previous child custody determination that is entitled to be enforced under this part ... any order issued by a court of this state under this section must specify in the order a period that the court considers adequate to allow the person seeking an order to obtain an order from the state having jurisdiction.... The order issued in this state remains in effect until an order is obtained from the other state within the period specified or the period expires.
"(d) A court of this state that has been asked to make a child custody determination under this section, upon being informed that ... a child custody determination has been made by [ ] a court of a state having jurisdiction ... shall immediately communicate with the other court...."
Under section 3424 a California court may enter a child custody order for a child subject to an existing sister state custody order only if it finds an emergency necessitating protection of the child from mistreatment or abuse and the order is limited in time to a specified period. Except as authorized by section 3424, a California court may not make an initial custody order or modify a sister state child custody order unless prescribed conditions not *904 here present exist. (§§ 3421, 3423.) The finding of an emergency "should not be made `in a rush to judgment' but rather `after a full and fair evidentiary hearing.' [Citation.]" (People v. Beach (1987) 194 Cal.App.3d 955, 963, 240 Cal.Rptr. 50; see also Matter of C.O. and J.O. (Okla.Ct.App. 1993) 856 P.2d 290, 294 [the "court has the duty to take evidence on the issue of abuse to determine whether emergency jurisdiction is proper"].) Unsubstantiated allegations are insufficient to invoke emergency jurisdiction. (Roberts v. District Court of Larimer County (1979) 198 Colo. 79, 82 [596 P.2d 65, 68]; Tenenbaum v. Sprecher (1987) 133 A.D.2d 371, 373 [519 N.Y.S.2d 273, 274]; Glynn v. Meslin (R.I.1987) 532 A.2d 554, 556.)[3]
Here the only evidentiary hearing held was the dependency jurisdictional hearing on the section 300 petition in which the juvenile court found C. was a person described in section 300, subdivision (d) as a child who has been, or there is a substantial risk will be, sexually abused by a parent. The true finding on the section 300 petition with regard to C. is not authorized by the Act because, although it may establish the required emergency, it has permanent rather than temporary ramifications with regard to custody.
The purpose of the section 300 jurisdictional hearing is to determine whether the child is a person described by section 300; the hearing is a condition precedent to a permanent custody disposition under the dependency scheme. The purpose of the section 3424 hearing is limited to a determination of the existence of an emergency, and under the Act emergency jurisdiction may be exercised to protect the child only on a temporary basis. (9 West's U. Laws Ann., supra, UCCJEA Prefatory Note at p. 651.) Assumption of emergency jurisdiction does not confer upon the state exercising emergency jurisdiction the authority to make a permanent custody disposition. (In re Joseph D., supra, 19 Cal.App.4th at p. 689, 23 Cal. Rptr.2d 574.)
Rodney contends the true finding that C. is a person described in section 300, subdivision (d) is not a determination contemplated by section 3424, subdivision (c). The true finding under section 300 begins the dependency process. It has no time limitations. That point is evident here, because the social worker prepared a case plan with a projected case completion date of March 2002. In contrast to a section 300 finding, the order assuming emergency jurisdiction under the Act has time limitations. It must specify "a period that the court considers adequate to allow the person seeking an order to obtain an order from the state having jurisdiction." (§ 3424, subd. (c).) It "remains in effect until an order is obtained from the other state within the period specified or the period expires." (Ibid.) Because a true finding under section 300 has no time limitations, it is not the type of determination contemplated by section 3424.[4] Furthermore, a finding of emergency under the Act does not contemplate or authorize a finding that the minor is a person described in section 300. Under the Act, the *905 jurisdictional finding is one of necessity in an emergency to protect the child who is subjected to or threatened with mistreatment or abuse. Thus, the hearing to determine whether an emergency exists under the Act is a procedure separate and distinct from a section 300 jurisdictional hearing. We conclude the juvenile court was not authorized under the Act to make the section 300 true finding, and reverse the finding that C. is a person described in section 300, subdivision (d).
However, material evidence presented at a hearing in which the court makes a true finding under section 300, subdivision (d), duplicates in part the evidence the court would receive when determining whether an emergency exists under the Act. (See In re Joseph D., supra, 19 Cal.App.4th at p. 685, 23 Cal.Rptr.2d 574.) At the dependency jurisdictional hearing here the parties were properly noticed, testimonial and documentary evidence was introduced and considered, and the juvenile court found true that C. had been or there was a substantial risk she would be sexually abused by Rodney. This true finding, although unauthorized by the Act, necessarily included a finding under the Act that an emergency existed and it was necessary to protect C. from actual or threatened mistreatment or abuse.[5] The court's section 300 true finding was a finding sufficient to invoke emergency jurisdiction under the Act.
The juvenile court then issued an order placing C. with Leslie pending further order by the Arkansas court. Under section 3424, subdivision (c), the custody order should have been limited to a duration determined after consultation with the Arkansas court. One reason for consultation with the sister state court is to determine from the sister state court a date by which it could realistically resume consideration of the custody dispute and make further custody orders within its jurisdiction. (See § 3424, subd. (d).) By not limiting the duration of the custody order, the California court erred. Under the Act, the California court custody order is limited to the earlier of the order's expiration date or the issuance of a custody order by the Arkansas court. Although the custody order is not of limited duration, because Arkansas has agreed to hear the disposition of the matter and the California court has terminated jurisdiction, noncompliance with section 3424, subdivision (c) by not limiting the duration of the custody order has not been shown by Rodney to be prejudicial.[6]

B. Communication Between Courts Under The Act

1. Immediate Communication
Rodney contends the court erred by not immediately contacting the *906 court in Arkansas.[7] When a California court is asked to make a child custody determination under the Act and is informed that a child custody determination has previously been made by a sister state court having jurisdiction, the California court "shall immediately communicate with the other court." (§ 3424, subd. (d).) Here, it is undisputed the California juvenile court did not contact the Arkansas court until almost one month after learning of that court's custody order. The California Family Court contacted the Arkansas court on or before August 1, 2001. However, because the juvenile court assumed jurisdiction after that communication, the juvenile court was obligated to contact the Arkansas court because it was asked to make a custody determination and it was aware of the existing Arkansas court custody order.
The meaning of section 3424, subdivision (d) is plain and unambiguous. A California court must contact the sister state court immediately. As a practical matter, we interpret this requirement to be as soon as possible after learning of the existence of proceedings in the sister state court.[8] The courts must "resolve the emergency, protect the safety of the parties and the child, and determine a period for the duration of the temporary order." (§ 3424, subd. (d).) To make an appropriate order under the Act, the California court needs to know whether the sister state court wishes to continue its jurisdiction and how much time it requires to take appropriate steps to consider further child custody orders. The statute does not allow the California court to wait to contact the other court until it makes a determination under the Act to assume emergency jurisdiction.[9] The California juvenile court erred when it did not sooner contact the Arkansas court.
The error here, however, is not prejudicial. Although the statute states the court shall immediately contact the other court, it does not provide any penalty for noncompliance. When a statute does not provide any consequence for noncompliance, the language should be considered directory rather than mandatory. (In re Charles B. (1986) 189 Cal.App.3d 1204, 1210, 235 Cal.Rptr. 1; In re Melinda J. (1991) 234 Cal.App.3d 1413, 1419, 286 Cal.Rptr. 239.) The directory and mandatory designations do not refer to whether a particular statutory requirement is permissive or obligatory, but simply denote whether the failure to comply with a particular procedural step will invalidate the *907 governmental action to which the procedural requirement relates. (In re Charles B., supra, 189 Cal.App.3d at p. 1209, 235 Cal.Rptr. 1.) Even though the California juvenile court erred here by not sooner contacting the Arkansas court, the error does not warrant reversal in this case because there is no showing of prejudice.

2. Record of Communications Between the Courts
Rodney contends the court erred because it did not properly record the conversations it had with the Arkansas court. A record must be made of the communications between the courts discussing matters, other than schedules, calendars, court records and similar matters, under the Act. (§ 3410, subds.(c), (d).) The record must be "inscribed on a tangible medium" or stored in an electronic or other medium, and be retrievable in perceivable form. (§ 3410, subd. (e).)
Here, there were four communications between the California and Arkansas courts. The conversations that occurred on or before August 1, 2001, and on September 20, 2001, were described in memoranda. The October 4 and 29, 2001, conversations were described by the court on the record during a hearing the day following each conversation. Written memoranda and reporter's transcripts are tangible mediums and are retrievable by the parties.
Rodney appears to argue the court should have recorded the conversations verbatim. However, a record "includes notes or transcripts of a court reporter who listened to a conference call between the courts, an electronic recording of a telephone call, a memorandum or an electronic record of the communication between the courts, or a memorandum or an electronic record made by a court after the communication." (9 West's U. Laws Ann. (1999) U. Child Custody Jur. & Enf. Act, com. to § 110, p. 667.) Here, the first two conversations were described in memoranda to the file, both of which detailed the substance of the conversations. The second two conversations were memorialized on the record at hearings at which a reporter's transcript was made. These methods provided an account of the events. Although a verbatim transcript would effectively avoid disputes as to the content of these conversations, the statute does not require tape recordings or reporter's transcripts of the inter-court conversations.
Further, even if the conversations were improperly recorded, Rodney has not demonstrated prejudice. The matter has been transferred to Arkansas. The Arkansas court has the entire California juvenile court file, including reporter's transcripts. Moreover, we have reversed the section 300 true finding, transferring to the Arkansas court the question of further custody orders.

II

DURATION OF AN EMERGENCY
Leslie contends the court erred by terminating jurisdiction because a continuing emergency existed. The issue posed by Leslie is when emergency jurisdiction under the Act ceases.
One of the reasons the UCCJA was revised and the Act enacted was to clarify when a court could take emergency jurisdiction over a child. The Act made clear that emergency jurisdiction could be exercised to protect a child only on a temporary basis until the court with appropriate jurisdiction issued a permanent order. (9 West's U. Laws Ann., supra, U. Child Custody Jur. & Enf. Act, Prefatory Note, p. 651.) Neither the Act nor its predecessor was "contemplated to be a vehicle for a *908 state to attain modification jurisdiction on an ongoing basis or for an indefinite period of time." (In re Joseph D., supra, 19 Cal. App.4th at p. 691, 23 Cal.Rptr.2d 574.) Assumption of emergency jurisdiction does not confer upon the state exercising emergency jurisdiction the authority to make a permanent custody disposition. (Id. at pp. 689-690, 23 Cal.Rptr.2d 574.) Leslie acknowledges the temporary nature of the emergency but, citing In re Nada R., supra, 89 Cal.App.4th 1166, 108 Cal.Rptr.2d 493, contends that because the dependency proceeding was ongoing, the emergency continued. However, we have held that the California juvenile court here did not have authority under the Act to conduct a dependency proceeding under section 300. Therefore, the dependency proceeding is not ongoing. Any dependency proceeding is properly within the purview of the Arkansas court to which the matter has been transferred and the emergency jurisdiction of the California court ended with the transfer of the matter to the Arkansas court.
Under certain circumstances, a court may address the merits of a dependency petition after determining an emergency exists. (In re Nada R., supra, 89 Cal. App.4th at p. 1175, 108 Cal.Rptr.2d 493.) However, to do so under the Act, the court must assert jurisdiction under section 3421 or 3423, which are not emergency jurisdiction provisions. In In re Nada R., the father, a Saudi Arabian citizen, and the mother, a United States resident, had a daughter in California and moved to Saudi Arabia where a second daughter was born. (In re Nada R., supra, 89 Cal.App.4th at p. 1171, 108 Cal.Rptr.2d 493.) The mother moved back to California and the father unilaterally obtained a divorce and was awarded custody of both children by a Saudi Arabian court. (Ibid.) Five years later, after the father took the children to Florida and hit one child, the mother took them to California. (Ibid.) Both children disclosed the father drove with them while intoxicated and one child disclosed multiple episodes of sexual abuse. (Id. at pp. 1171-1172, 108 Cal.Rptr.2d 493.) There was no evidence a Saudi Arabian court would address the problems disclosed by the children. Under such circumstances, the court could properly assume jurisdiction under section 3423 apart from its emergency jurisdiction under section 3424.
Here, the Arkansas court stated it was willing and able to address the custody issue in its court. It would recognize the custody order issued in California placing C. with Leslie pending further proceedings in the Arkansas court. That order removed the risk C. would be sexually abused by Rodney because she could have no contact with him pending further court order. At that time, the emergency ended, and the California court was correct in terminating jurisdiction.
Leslie asserts C. remained at risk because if the matter is transferred back to Arkansas, the child will have to travel to Arkansas to testify in the matter. However, in Arkansas, if the child's testimony is necessary and he or she is located in another state, he or she may testify by telephone, audiovisual means, or other electronic means. (Ark.Code Ann. § 9-19-111(a), (b).) His or her testimony may also be taken by deposition. (Ibid.) C. need not go to Arkansas to testify.
Leslie also contends there is a continuing emergency because the Arkansas court that will hear the matter is a family court. However, the Arkansas juvenile court has exclusive jurisdiction of proceedings in which a juvenile is alleged to be a dependent. (Ark.Code Ann. § 9-27-306(a)(1).) Moreover, the juvenile court has jurisdiction to hear proceedings commenced in a court of comparable jurisdiction of another *909 state that are transferred to it pursuant to the Act. (Ark. Code Ann. § 9-27-306(f).) If the Arkansas juvenile court does not resume jurisdiction, Leslie may file a petition to have C. declared a dependent. (Ark.Code Ann. § 9-27-310(b)(3)(A).) "The courts of the home state of the child are equally well suited to remedy the ills [that] result from alleged parental abuse or neglect." (Roberts v. District Court of Larimer County, supra, 596 P.2d at p. 68.) We have no reason to believe that the state of Arkansas is unwilling or unable to exercise its sound parens patriae duty to protect its resident children. (See In re Joseph D., supra, 19 Cal.App.4th at pp. 691-692, 23 Cal.Rptr.2d 574.) Leslie has not demonstrated a continuing emergency existed. The California juvenile court here did not err by terminating its jurisdiction.

DISPOSITION
The true finding under section 300 is reversed. The order placing C. with Leslie and terminating jurisdiction is affirmed.
WE CONCUR: NARES, Acting P.J., and HALLER, J.
NOTES
[1] All statutory references are to the Family Code unless otherwise specified.
[2] Section 300, subdivision (d) states: "The child has been sexually abused, or there is a substantial risk that the child will be sexually abused, as defined in Section 11165.1 of the Penal Code, by his or her parent or guardian or a member of his or her household, or the parent or guardian has failed to adequately protect the child from sexual abuse when the parent or guardian knew or reasonably should have known that the child was in danger of sexual abuse."
[3] The fact the court must hold an evidentiary hearing does not deprive it pre-hearing of jurisdiction to detain the child. "[W]hen a petition contains allegations of an emergency situation, it is proper for a court to issue an interim custody order to protect the child pending a hearing." (People v. Beach, supra, 194 Cal.App.3d at p. 970, 240 Cal.Rptr. 50; In re Joseph D. (1993) 19 Cal.App.4th 678, 688-689, 23 Cal.Rptr.2d 574.) No party contends the court did not have the authority at the detention hearing to enter an order temporarily detaining C. with Leslie.
[4] Here, the court entered a true finding because of this court's holding in In re Joseph D., supra, 19 Cal.App.4th 678, 23 Cal.Rptr.2d 574. There, the juvenile court determined an emergency existed without holding an evidentiary hearing. (Id. at p. 685, 23 Cal.Rptr.2d 574.) It held a trial on the dependency petition and made a true finding, but also found "strong evidence justifying emergency jurisdiction." (Ibid.) However, in that case, because no party contested the appropriateness of that procedure, that court was not asked to address the issue presented here. Moreover, that case was decided under the old statutory scheme, which did not contain the language in section 3424, subdivision (c) that the order finding emergency jurisdiction must be limited in duration.
[5] Rodney does not challenge the sufficiency of the evidence supporting the true finding.
[6] Rodney alternatively argues that assuming the court could make a true finding, it erred in concluding California was a convenient forum. Because we agree with his contention that the challenged section 300, subdivision (d) finding should not have been made, we need not address this argument.
[7] Although the Agency admits the court did not promptly contact the Arkansas court, it contends Rodney waived his right to contest the communication issue by not raising it in the trial court. However, Rodney repeatedly raised the issue of the court's communication with the Arkansas court. Regardless, even if a waiver occurred, we may, at our discretion, hear issues the party has waived, particularly when the parties have already briefed them. (Tsemetzin v. Coast Federal Savings & Loan Assn. (1997) 57 Cal.App.4th 1334, 1341, fn. 6, 67 Cal.Rptr.2d 726; Richmond v. Dart Industries, Inc. (1987) 196 Cal.App.3d 869, 874, 242 Cal.Rptr. 184.)
[8] We do not think the court needs to stop the proceeding and telephone the other court the instant the court learns of an issue under the Act. However, the court must do so shortly thereafter.
[9] Here, the court believed it had no obligation to contact the Arkansas court until it made a true finding under section 300. This belief was based on In re Joseph D., supra, 19 Cal. App.4th at pp. 692-693, 23 Cal.Rptr.2d 574, in which we stated the juvenile court should contact the other court after it made a true finding. However, In re Joseph D. was decided under the previous statutory scheme, which did not require the court to immediately contact the other court when it learned of the other court's involvement. (Former Civ. Code, § 5155, subd. (2).)