Filed 9/26/14  In re Gustavo L. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### COURT OF APPEAL, FOURTH APPELLATE DISTRICT

### DIVISION ONE

### STATE OF CALIFORNIA

| | |
|---|---|
| In re GUSTAVO L., JR., a Person Coming Under the Juvenile Court Law. | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | D065359 |
| Plaintiff and Respondent, | (Super. Ct. No. SJ12753A) |
| v. | |
| GUSTAVO L., SR., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of San Diego County, Garry G. Haehnle, Judge.  Affirmed in part; dismissed in part as moot.

Jamie A. Moran, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Erica C. Cortez, Deputy County Counsel, for Plaintiff and Respondent.

Valerie Lankford, under appointment by the Court of Appeal, for Minor.

## INTRODUCTION

This case involves now-nine-year-old Gustavo L., Jr. (Jr.), who was removed from the care of his mother, Cynthia V. (mother), in April 2012 as a result of mother's attempt to smuggle drugs from Mexico into the United States while Jr. was in the car with her. Mother was arrested. Jr.—who was born in Colton, California—and mother had moved around in California, Nevada, and Mexico. Their most recent residence was Tijuana, Mexico, but they only lived there for four months prior to mother's arrest. Jr.'s presumed father, Gustavo L., Sr. (father), is a Mexican national who had been deported from San Bernardino County to Mexico in 2007 as a result of drug possession and domestic violence convictions and now resides in Tijuana with Jr.'s six siblings. Both parents have criminal histories.

Father appeals (1) the juvenile court's July 9, 2012 order taking "full jurisdiction" over this case, and (2) the court's December 4, 2013 order suspending father's visitation with Jr. He contends (1) the court lacked subject matter jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) (Fam. Code,[1] § 3400 et seq.); and (2) the court erred in granting the San Diego County Health and Human Services Agency's (Agency's) petition under Welfare and Institutions Code section 388 to suspend his visitation with Jr. because the Agency "did not present sufficient evidence of changed circumstances, or that the requested change in the visitation order would be in [Jr.'s] best interests."

---

[1]     Statutory references are to the Family Code unless otherwise specified.

2

In its pending motion for judicial notice and dismissal of this appeal,[2] the Agency requests that this court (1) take judicial notice of the juvenile court's February 18, 2014 postappeal order terminating father's parental rights; and (2) dismiss father's entire appeal on the ground it is moot because subsequent to the challenged December 2013 order suspending father's visitation with Jr., the court terminated his parental rights, he did not appeal from the termination order and that order is now final.

In a letter brief, Jr.'s appellate counsel states she agrees with the Agency that the juvenile court properly took subject matter jurisdiction in this case under section 3421, subdivision (a)(2) (hereafter section 3421(a)(2)) because Jr. "had no home state [within the meaning of the UCCJEA], there were no custody orders involving [Jr.] in any other state, and the family had significant connections to California."

We grant the Agency's motion for judicial notice of the order terminating father's parental rights, but deny its companion motion for dismissal of the entire appeal in order to reach the merits of father's claim that the court lacked subject matter jurisdiction under the UCCJEA. We conclude that the juvenile court had subject matter jurisdiction under section 3421(a)(2) and that father's claim on appeal that the court erred in ordering the suspension of his visitation with Jr. is moot and must be dismissed because he did not appeal the now-final order terminating his parental rights.

---

[2]     Under this court's order dated May 29, 2014, the Agency's combined unopposed motion for judicial notice and opposed motion to dismiss this appeal as moot is considered concurrently with his appeal.

FACTUAL AND PROCEDURAL BACKGROUND[3]

In April 2012 the Agency filed a petition in the juvenile court under Welfare and Institutions Code section 300, subdivision (b) alleging Jr. was at substantial risk of suffering harm as a result of mother's failure or inability to adequately protect him. Specifically, the petition alleged that mother had been arrested at the border after attempting to cross into the United States from Mexico with over 14 kilograms of cocaine concealed in her vehicle while Jr. was a passenger in the vehicle. The petition also alleged Jr. was suffering from severe dental neglect in that his four front teeth were black and worn down, his teeth hurt when he ate, and mother had failed and refused to provide the dental care and treatment he needed. Immediately prior to mother's arrest, she and Jr. had been living in Tijuana, Mexico, because she had lost her job in Las Vegas, Nevada. During three of those four months, mother and Jr. lived in father's home with Jr.'s six siblings.

At the contested jurisdiction and disposition hearing held on July 9, 2012, the juvenile court took jurisdiction under the UCCJEA, finding that Jr. was a United States citizen because he was born in California and that there were no custody or visitation orders out of any court in Mexico. The court found the allegations in the petition to be true, declared Jr. a dependent of the juvenile court, removed him from mother's care,

_____

[3]     This case has a lengthy and complex factual background. We limit our summary to facts necessary to provide context for resolution of the dispositive UCCJEA jurisdictional issue raised in both father's appeal and his opposition to the Agency's pending dismissal motion. Additional facts will be discussed as needed in the discussion part of this opinion.

found it would be detrimental to place him with the father, and then placed him in a licensed foster home.

At the six-month review hearing, the juvenile court terminated reunification services for the mother and ordered continued reunification services for the father.

At the 12-month review hearing, the juvenile court terminated the father's reunification services.

In November 2013, at the selection and implementation hearing held under Welfare and Institutions Code section 366.26, the Agency recommended that Jr. be freed for adoption and that mother's and father's parental rights be terminated. In addition, the Agency filed a petition under Welfare and Institutions Code section 388 requesting that the father's visitation with Jr. be suspended pending the outcome of the selection and implementation hearing, which was continued at the Agency's request.

Regarding the Agency's Welfare and Institutions Code section 388 petition, Jr.'s CASS[4] therapist opined that the "pressure" he received during visitations with the father and his siblings to reunify may have increased Jr.'s anxiety and disruptive behaviors at home and at school. Another therapist indicated that Jr.'s current diagnosis was posttraumatic stress disorder, and recommended that visits with the father cease given that Jr. suffered anxiety, avoidance, irritable behaviors, and a decrease in coping skills after visits with the father. Jr. became distressed and reported losing sleep over the fact that father's reactions and/or comments during visits made him feel bad.

---

[4]     CASS refers to Comprehensive Assessment Stabilization Services.

5

After considering this evidence, the juvenile court granted an interim order suspending the father's visits pending a further hearing on the Agency's Welfare and Institutions Code section 388 petition.

On December 4, 2013, following an evidentiary hearing on the Agency's Welfare and Institutions Code section 388 petition, the juvenile court granted the petition, finding there had been a change of circumstances regarding Jr.'s visitation with the father, and also finding by clear and convincing evidence that it was in Jr.'s best interests to suspend the father's visits. In making this order, the juvenile court took into account the opinions of two experts that it was in Jr.'s best interest to stop visitation, as well as the fact that Jr.'s prior behaviors, such as his slamming of doors and locking himself into his bedroom, had significantly improved following the temporary suspension of the father's visits.

At this hearing, the Agency requested that the juvenile court readdress the issue of jurisdiction and find that Jr. did not have a home state as defined under the UCCJEA. The juvenile court was reluctant to readdress the issue given its previous jurisdictional finding on July 9, 2012, but ultimately ordered that the issue would be addressed at the next Welfare and Institutions Code section 366.26 hearing.

Father filed a timely notice of appeal challenging the December 4, 2013 order suspending his visitation with Jr.

At the Welfare and Institutions Code section 366.26 hearing held on January 16, 2014, the juvenile court confirmed it had proper jurisdiction under the UCCJEA. The court granted the request of father's attorney for a continuance to speak to the father about

6

whether he wanted to contest the Agency's recommendation to terminate his parental rights.

At the Welfare and Institutions Code section 366.26 hearing held on February 18, 2014, father's counsel informed the court she was authorized to proceed on behalf of the father. After considering the submitted evidence, the juvenile court terminated the mother's and father's parental rights and freed Jr. for adoption. The father did not appeal from the termination order.[5]

## DISCUSSION

### I. *AGENCY'S MOTION FOR JUDICIAL NOTICE AND DISMISSAL OF FATHER'S APPEAL*

In its pending motion, the Agency first requests that this court take judicial notice of the juvenile court's February 18, 2014 order terminating father's parental rights. The juvenile court issued this order after father filed his timely notice of appeal in this matter on January 25, 2014. In his opposition to the Agency's motion, father does not oppose the Agency's request for judicial notice. We grant the Agency's request for judicial notice. (Evid. Code, § 459, subd. (a).)

In its motion the Agency also contends father's pending appeal should be dismissed on the ground it is moot because subsequent to the challenged December 2013 order suspending his visitation with Jr., the juvenile court terminated his parental rights,

---

5       In his opposition to the Agency's pending motion for judicial notice and dismissal of this appeal, father does not dispute that he did not appeal from the order terminating his parental rights.

7

he did not appeal from the termination order, and that order is now final.[6] We reject this contention and deny the Agency's motion to the extent it seeks dismissal of father's claim the court lacked jurisdiction under the UCCJEA.

In his appeal father asserts two claims. First, he claims the court lacked subject matter jurisdiction under the UCCJEA. Second, he claims the court erred in granting the Agency's petition under Welfare and Institutions Code section 388 to suspend his visitation with Jr.

In its motion for dismissal of both of the foregoing claims on appeal, the Agency suggests father's jurisdictional claim should be dismissed as moot because his failure to appeal the February 2014 order terminating his parental rights conferred subject matter jurisdiction and deprived us of appellate jurisdiction to resolve that claim. However, as we explained in *In re A.M.* (2014) 224 Cal.App.4th 593, 598, "[s]ubject matter jurisdiction either exists or does not exist at the time the action is commenced and cannot be conferred by stipulation, consent, waiver or estoppel." Thus, father did not confer subject matter jurisdiction by failing to appeal the February 2014 order terminating his parental rights, and his failure to appeal that order did not deprive us of appellate jurisdiction to resolve his jurisdictional claim under the UCCJEA. (*In re A.M.,* at p. 598.) Accordingly, we conclude father's jurisdictional claim is not moot and we deny the Agency's motion to the extent it seeks dismissal of that claim. (*Ibid.*; see *In re Joshua C.* (1994) 24 Cal.App.4th 1544, 1547-1548 [appeal in juvenile dependency matter should

---

6    In his opposition to the Agency's motion, father does not contest the Agency's assertion that the February 18, 2014 order terminating his parental rights is final.

not be dismissed as moot when doing so forecloses parent from challenging the jurisdictional findings].)

However, we grant the Agency's motion to the extent it seeks dismissal of father's second claim on appeal that the court erroneously granted the Agency's petition under Welfare and Institutions Code section 388 to suspend his visitation with Jr.. "When no effective relief can be granted, an appeal is moot and will be dismissed." (*In re Jessica K.* (2000) 79 Cal.App.4th 1313, 1315.) In *Jessica K.* the dependency court denied a mother's petition under Welfare and Institutions Code section 388 for the return of her child to her custody and later terminated the mother's parental rights and ordered that the child be placed for adoption. (*Jessica K., at p. 1315.*) The mother appealed from the order denying her petition, but she did not appeal from the order terminating her parental rights. (*Ibid.*) The Court of Appeal dismissed the mother's appeal as moot. (*Id.* at p. 1317.) The *Jessica K.* court explained that the mother allowed the parental rights termination order to become final by failing to appeal from that order and, as a result, her appeal from the denial of her Welfare and Institutions Code section 388 petition was moot because "[n]o effective relief [could] be afforded mother even were [it] to find her appeal . . . meritorious." (*Jessica K.,* at pp. 1316-1317.)

Similarly here, father allowed the order terminating his parental rights to become final by failing to appeal from that order. As a result, if the juvenile court properly had jurisdiction over this case under the UCCJEA, it had authority to order the termination of father's parental rights, and father's appeal from the denial of his Welfare and Institutions Code section 388 petition is moot and must be dismissed because no effective relief may

9

be afforded him. For reasons we shall explain, we conclude the juvenile court had jurisdiction over this case under the UCCJEA. Accordingly, we grant the Agency's motion to dismiss as moot father's claim on appeal that the court erred in granting the Agency's Welfare and Institutions Code section 388 petition.

## II. *FATHER'S APPEAL (JURISDICTION)*

As noted, father claims the court lacked subject matter jurisdiction over this case under the UCCJEA, and thus it lacked jurisdiction to grant the Agency's petition under Welfare and Institutions Code section 388 to suspend his visitation with Jr. We reject this claim.

### A. *General Principles Governing Jurisdiction Under the UCCJEA*

The UCCJEA is the exclusive method in California for determining subject matter jurisdiction in child custody proceedings involving other jurisdictions. (§ 3421, subd. (b); *In re Marriage of Nurie* (2009) 176 Cal.App.4th 478, 490.) The term "child custody proceeding" is statutorily defined as "a proceeding in which legal custody, physical custody, or visitation with respect to a child is an issue." (§ 3402, subd. (d).) "A dependency action is a '[c]hild custody proceeding' subject to the UCCJEA." (*In re A.M.*, *supra*, 224 Cal.App.4th at p. 597.)

The purposes of the UCCJEA in the context of dependency proceedings include avoiding jurisdictional competition and conflict, promoting interstate cooperation, litigating custody or visitation where the child and family have the closest connections, avoiding relitigation of another state's custody or visitation decisions, and promoting exchange of information and other mutual assistance between courts of sister states. (*In*

10

*re C.T.* (2002) 100 Cal.App.4th 101, 106.) "Under the UCCJEA, a California court must 'treat a foreign country as if it were a state of the United States for the purpose of' determining jurisdiction." (*In re Marriage of Nurie*, *supra*, 176 Cal.App.4th at p. 490, quoting § 3405, subd. (a).)

As noted, *ante*, "[s]ubject matter jurisdiction either exists or does not exist at the time the action is commenced and cannot be conferred by stipulation, consent, waiver or estoppel." (*In re A.M.*, *supra*, 224 Cal.App.4th at p. 598.)

With exceptions not applicable here, under section 3421, subdivision (a), California may assume jurisdiction to make an initial child custody determination only if any of four circumstances specified in that subdivision applies.

First, California is the child's "home state" on the date the proceeding commenced or was the home state of the child within six months before the proceeding commenced and a parent continues to live in California if the child is absent from the state. (§ 3421, subd. (a)(1).) "'Home state' means the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding. . . . A period of temporary absence of any of the mentioned persons is part of the period." (§ 3402, subd. (g).)

Second, of particular importance here, *there is no home state* or a court of the child's home state "has declined to exercise jurisdiction on the grounds that this state is the more appropriate forum" (§ 3421(a)(2)) *and both of the following are true*: *the child and at least one parent have a "significant connection" to California other than mere*

11

*physical presence, and "substantial evidence" is available in California as to the child's care, protection, training and personal relationships.* (*Ibid.*)

Third, all courts having jurisdiction under the prior two tests have declined to exercise jurisdiction on the ground California is the more appropriate forum. (§ 3421, subd. (a)(3).)

Fourth, no other state has jurisdiction under any of the foregoing tests. (§ 3421, subd. (a)(4).)

1. *Standard of review*

"We are not bound by the juvenile court's findings regarding subject matter jurisdiction, but rather 'independently reweigh the jurisdictional facts.'" (*In re A. C.* (2005) 130 Cal.App.4th 854, 860.)

B. *Analysis*

In his appellant's opening brief, father asserts the juvenile court lacked subject matter jurisdiction under the UCCJEA because Jr. "had no prior connection to California" and "Mexico . . . should have jurisdiction over [Jr.]." However, in his reply brief father acknowledges both that Jr. *does* have a prior connection to California and that Jr. has no home state for purposes of the UCCJEA, but he asserts that Jr. "had not [*sic*] prior connection to San Diego County, as he was a resident of Tijuana at the time he was detained" at the border. Both the Agency and Jr.'s appellate counsel argue the court properly had subject matter jurisdiction under section 3421(a)(2).

As discussed, *ante*, under section 3421(a)(2) the juvenile court had subject matter jurisdiction over this case under the UCCJEA if (1) Jr. had no home state when the

12

dependency proceedings commenced in this case in April 2012, (2) Jr. and at least one of his parents have a significant connection to California other than mere physical presence, and (3) substantial evidence is available in California concerning Jr.'s care, protection, training and personal relationships. (§ 3421(a)(2).)

Father acknowledges that Jr. had no home state when the dependency proceedings commenced in this case. Thus, the first jurisdictional prerequisite set forth in section 3421(a)(2) is satisfied.

The second jurisdictional prerequisite set forth in section 3421(a)(2) is met because the record establishes that both Jr. and mother have a significant connection to California other than mere physical presence. As noted, father acknowledges in his reply brief that Jr. has a connection to California. Indeed, the record shows that Jr. was born in Colton, California. Father asserts that his earlier statement that Jr. had no prior connection to California was "an obvious, and unintentional misstatement" and "[t]he point he was trying to make was that [Jr.] had not [*sic*] prior connection to San Diego County, as he was a resident of Tijuana at the time he was detained." However, it is immaterial that Jr. had no prior connection to San Diego County because the jurisdictional prerequisite in question expressly requires only that the child and at least one parent have a significant connection to "this state" (California) other than mere physical presence. (§ 3421, subd. (a)(2)(A).)

In addition, the Agency presented evidence that mother has a sister who resides in California and Jr. has an extended family (including uncles, aunts, and cousins) who reside in Riverside. The Agency also provided evidence showing Jr. and his family had

13

lived in California for a significant period of time as evidenced by the fact that (1) the family was investigated for abuse or neglect by a California child welfare agency in San Bernardino County on numerous occasions over the course of about nine years, and Jr.—who was born in 2005—was the subject of four of those investigations during the first two years of his life; and (2) the family was the subject of three dependency cases in that county.

The last jurisdictional prerequisite set forth in section 3421(a)(2) is met because the record establishes that "[s]ubstantial evidence is available in this state concerning [Jr.'s] care, protection, training, and personal relationships" (§ 3421, subd. (a)(2)(B)).  As already discussed, the Agency presented evidence showing that Jr. lived in California with his family for at least the first two years of his life, and virtually all of the child welfare history concerning the family came from a California social services agency. The record also shows that Jr. suffered severe dental neglect and underwent oral surgery in California.

Father asserts that "[t]he only things that support the finding of jurisdiction (the social worker's reports, the health treatment [Jr.] received in San Diego, etc.) arise directly out of the mere fact that he found himself in custody here when mother was arrested."  However, the record discussed, *ante*, belies this assertion.

Father's reliance on this court's recent decisions in *In re Gino C.* (2014) 224 Cal.App.4th 959 and *In re A.M.*, *supra*, 224 Cal.App.4th 593, is unavailing.  In both of those cases, unlike in this case, Mexico was the child's home state for purposes of the UCCJEA.  (*In re Gino C.*, at p. 965; *In re A.M.*, at p. 597.)

14

For all of the foregoing reasons, we conclude that the juvenile court had subject matter jurisdiction under section 3421(a)(2) and that father's claim that the court erred in ordering the suspension of his visitation with Jr. is moot and must be dismissed because he did not appeal the order terminating his parental rights.

## DISPOSITION

The juvenile court's decision to take jurisdiction is affirmed. Father's claim on appeal that the juvenile court erred in granting the San Diego County Health and Human Services Agency's petition under Welfare and Institutions Code section 388 to suspend father's visitation with Jr. is dismissed as moot.

NARES, J.

WE CONCUR:

BENKE, Acting P. J.

McINTYRE, J.

15