Filed 5/17/19

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re the Marriage of MOLLY and SAMUEL KENT. | D074529 |
| MOLLY KENT,<br><br>     Appellant,<br><br>v.<br><br>SAMUEL KENT,<br><br>     Respondent. | (Super. Ct. No. 18FL001703N) |

APPEAL from an order of the Superior Court of San Diego County, Cynthia A. Freeland, Judge.  Reversed.

Bickford Blado & Botros and Andrew J. Botros for Appellant.

Moore, Schulman & Moore and Julie Ann Westerman for Respondent.

In this appeal the appellant challenges a specific ruling of the family court on her request for an order to modify a child custody and child support order *issued by a North Carolina court*.  The family court granted in part and denied in part the appellant's request, without first determining whether the California court had jurisdiction under the

Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA; Fam. Code, § 3400 et seq.[1]). Accordingly, without reaching the merits of the arguments related to the substantive ruling on appeal, we will reverse the order because, based on the record before the family court at the time it ruled, the court lacked jurisdiction to modify the North Carolina order.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant Molly Kent (Mother) and respondent Samuel Kent (Father) share two children ages 13 and 11. On August 2, 2017, the General Court of Justice, District Court Division, of the State of North Carolina, County of Iredell (North Carolina Court) filed a "Consent Order Regarding Modification of Child Custody, Permanent Child Custody, and Permanent Child Support" (North Carolina Order) in case No. 17-CVD-835, entitled *Kent v. Kent* (North Carolina Action). The North Carolina Order is 14 single-spaced typewritten pages, containing an introduction, 18 numbered paragraphs of Findings of Fact, 7 numbered paragraphs of Conclusions of Law, and more than 65 separately numbered paragraphs containing detailed orders regarding custody, visitation, support, and raising the children.

In February 2018, Mother initiated the underlying California family law action by filing certain declarations and registering the North Carolina Order in the North County Division of the San Diego County Superior Court, as required by the UCCJEA. (§§ 3445, 3429.)

---

[1]     Further unidentified "section" or "§" references are to the Family Code.

A month later, in March 2018, Mother filed a request in the California action for an order modifying 10 separate items contained in the North Carolina Order (RFO). The only one at issue in this appeal is Mother's request to delete a provision that limited each parent's contact with certain adults when the children were visiting that parent (Visitor Provision[2]). Indeed, Mother's appeal is directed only to the last two sentences of the Visitor Provision—i.e., those dealing with a specific potential visitor, A.R. (A.R. Provision). (See fn. 3, *post*.)

The family court heard oral argument in May 2018. In the minutes from the hearing, the court "note[d]" that "[t]he parties agree that California has UCCJEA jurisdiction" and that "Father resides in North Carolina." The parties' settled statement of the oral proceedings discloses: The parties stipulated that "California has jurisdiction to make custody orders pursuant to California Family Code section 3048"; the parties stipulated and the family court "noted" that Father resides in North Carolina; and "Mother's counsel argued that the court had already determined it had jurisdiction over child custody and visitation," although there is no indication as to when or how this determination occurred.

---

2    The Visitor Provision in the North Carolina order is entitled "Persons of the Opposite Sex" and provides in full: "Neither Father nor Mother shall have any adult unmarried person of the opposite sex unrelated by blood or marriage stay overnight at their place of residence when the minor children are in their physical custody. Should either party engage in an adult romantic relationship with any other individual, said party shall not intentionally allow said individual to be in the presence of the minor children until such time that the parties have obtained a divorce judgment. The minor children shall at no time intentionally be in the presence of Mr. [A.R.]. That should the minor children be unintentionally in the presence of Mr. [A.R.], Mother has the affirmative obligations to remove the minor children from Mr. [A.R.]'s presence."

The family court filed a findings and order after hearing (FOAH), which granted in part and denied in part Mother's RFO—expressly granting in part and denying in part Mother's request to delete of the Visitor Provision[3]—without any mention of the UCCJEA or jurisdiction to modify the North Carolina Order. Mother timely appealed from the FOAH.

## II. DISCUSSION

On appeal, Mother argues that the family court erred in denying that portion of her RFO in which she requested that the North Carolina Order be modified to delete the A.R. Provision. As we explain, we will reverse the FOAH without reaching the merits of Mother's appeal because the family court lacked jurisdiction to modify the North Carolina Order.

The UCCJEA determines the proper jurisdictional situs as between interested states for litigation of child custody determinations—which includes virtually any custody or visitation dispute (§ 3402, subd. (c)). As applicable here, the UCCJEA applies in a "child custody proceeding"—which, is defined in part as "a proceeding in which legal custody, physical custody, or visitation with respect to a child is an issue" (§ 3402, subd. (d))—commenced on or after January 1, 2000. (§ 3465.) " 'It is well settled in

---

3    In the FOAH, the family court ruled in part as follows: "[The Visitor Provision] is revised to strike the first two sentences of the provision. [¶] . . . Finding that the parties previously agreed to this provision and that it does not relate to custody and visitation, the court denies [Mother's] request to modify and have stricken the [A.R. Provision], which state[s] as follows: 'The minor children shall at no time intentionally be in the presence of Mr. [A.R.]. That should the minor children be unintentionally in the presence of Mr. [A.R.], Mother has the affirmative obligations to remove the minor children from Mr. [A.R.]'s presence.' "

4

California that the UCCJEA is the exclusive method of determining subject matter jurisdiction in custody disputes involving other jurisdictions.' " (*Ocegueda v. Perreira* (2015) 232 Cal.App.4th 1079, 1084; accord, *In re Stephanie M.* (1994) 7 Cal.4th 295, 310 [same; under the Uniform Child Custody Jurisdiction Act (UCCJA), Civ. Code, former § 5150 et seq. (Stats. 1973, ch. 693, § 1), which later became former § 3400 et seq. (Stats. 1992, ch. 162, § 10)[4]].)  Accordingly, UCCJEA jurisdictional requirements must be satisfied whenever a California court is called upon to make either an initial or *a modified* custody determination.  (*In re Marriage of Arnold & Cully* (1990) 222 Cal.App.3d 499, 502 [under the UCCJA].)

" '[A]mong the primary purposes of the [UCCJEA and its predecessor, the UCCJA,] is to encourage states to respect and enforce the prior custody determinations of other states, as well as to avoid competing jurisdiction and conflicting decisions.' " (*In re Marriage of Fernandez-Abin & Sanchez* (2011) 191 Cal.App.4th 1015, 1037 (*Fernandez-Abin*).)  "The UCCJEA ensures that only one state has jurisdiction to make 'child custody determinations' " at any one time.  (*Ibid.*)  In this regard (and as applicable in this appeal), the UCCJEA defines a "child custody determination" to include a "modification order" of a ruling by a "court providing for the legal custody, physical custody, or visitation with respect to a child."  (§ 3402, subd. (c).)

---

4       The UCCJA is the predecessor to, and was repealed and reenacted in major part in, the UCCJEA, found at current section 3400 et seq. (Stats. 1999, ch. 867, § 3).  " '[C]ases interpreting the UCCJA are instructive in deciding cases under the UCCJEA except where there is a conflict between the two statutory schemes.' "  (*R.B. v. D.R.* (2018) 28 Cal.App.5th 108, 116.)

Once an out-of-state custody order is registered in California under the UCCJEA—as Mother did in initiating the underlying action here—as a matter of full faith and credit, the order determining child custody is *enforceable* in California as a California judgment by way of any relief normally available under California law. (§ 3441 et seq.)  However, as an independent consideration, there is the additional issue of whether California has jurisdiction *to modify* an out-of-state custody order:  "A court of this state shall recognize and enforce, *but may not modify, except in accordance with* [*section 3421 et seq.*], a registered child custody determination of a court of another state."  (§ 3446, subd. (b), italics added.)  That is because, in cases like the present one, " 'once the court of an appropriate state [citation] has made a "child custody determination," *that court obtains* "exclusive, continuing jurisdiction*[.]" ' "  (*Fernandez-Abin*, *supra*, 191 Cal.App.4th at p. 1040, italics added.)  As such, absent the requisite determination outlined in the immediately following paragraph, "the court of another state, including California, '[c]annot modify the child custody determination[.]' "  (*Ibid.*; see §§ 3421, subd. (b), 3422, subd. (a), 3423, 3446, subd. (b).)

Except in emergency situations not present here (§ 3424), section 3423 directs that a California court may not modify an out-of-state custody order unless *both* of the following have been established:

1.  California has jurisdiction to make an initial determination under section 3421, subdivision (a)(1) or (2); *and*

2.  *Either*—

6

a. The out-of-state court has determined *either* that it no longer has exclusive continuing jurisdiction under section 3422 *or* that California would be a more convenient forum under section 3427, *or*

b. The out-of-state court or a California court determines that the child and the child's parents do not presently reside in the out-of-state forum.

If a California court determines from either party's first pleadings related to the foreign custody order under section 3429 (at times, section 3429 documents) that a child custody proceeding has been commenced in an out-of-state forum having jurisdiction "substantially in accordance with" the UCCJEA, then the California court "*shall stay*" *its proceeding and communicate with the other state's court*. (§ 3426, subd. (b), italics added.[5]) "The aim is for the two courts together to determine which of them is the 'more appropriate' forum to exercise jurisdiction." (Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2018) ¶ 7:129, p. 7-60.) If the out-of-state court having jurisdiction "substantially in accordance with" the UCCJEA does not determine that the California court is a "more appropriate" forum, then the California court "shall dismiss" its custody proceeding. (§ 3426, subd. (b).)

In the present case, both parties' attorneys and the family court were fully and formally advised of the North Carolina Action generally and the North Carolina Order

---

[5]     As applicable here, Mother's UCCJEA registration of the North Carolina Order and her accompanying declaration—in which she properly disclosed the North Carolina Action and North Carolina Order—qualify as section 3429 documents. Also, North Carolina is "in accordance with" the UCCJEA, having enacted the UCCJEA in 1999. (N.C. Gen. Stats. § 50A-101 et seq. (S.L. 1999-223, § 3).)

specifically. Nonetheless, the court ruled on Mother's RFO without first determining whether it had modification jurisdiction under the UCCJEA. The family court's notation in its minutes that "[t]he parties agree that California has UCCJEA jurisdiction" is insufficient to establish modification jurisdiction, because " '[t]here is no provision in the UCCJEA for jurisdiction . . . by stipulation[.]' "[6] (*Fernandez-Abin*, *supra*, 191 Cal.App.4th at p. 1040.) Further, the parties' stipulation and the court's finding that Father resides in North Carolina necessarily preclude any suggestion that the California court was authorized to determine it had modification jurisdiction under the UCCJEA without communicating with the North Carolina Court. (§ 3423, subd. (b).)

Accordingly, the family court erred in considering Mother's RFO. Because of the pendency of the North Carolina Action, the North Carolina Order, and the uncontradicted evidence in the section 3429 documents that Father resided in North Carolina, the California family court was required to stay the California proceedings and communicate with the North Carolina Court. (§ 3426, subd. (b).) In short, at the time the family court ruled on Mother's RFO, the court did not have modification jurisdiction under the UCCJEA, and on that basis the FOAH must be reversed.

In response to our request for supplemental briefing on the potential application of the UCCJEA to the underlying proceedings, both parties agree that the family court was not presented with and did not determine the issue of modification jurisdiction under the

---

6     Indeed, in requested supplemental briefing, Mother and Father each acknowledge this limitation.

8

statutorily required procedures. On this basis, Mother contends the FOAH is void and, as we have just concluded, should be reversed.

Father argues that a reversal on jurisdictional grounds would be "a miscarriage of justice," because Mother is just displeased with the family court's ruling and merely wants another opportunity to litigate the issue of striking the A.R. Provision. To support his position, Father relies on the principles of harmless error and lack of prejudice.[7] As we explain, however, we decline to apply those principles on the present record, where the jurisdictional issue was never considered; and, based on the record on appeal, the court's consideration of the RFO was an act in excess of the UCCJEA's modification jurisdiction set forth in section 3446, subdivision (b).

We begin with the understanding that a procedural error by itself is generally insufficient to set aside a judgment or order. That is because "the presumption in the California Constitution is that . . . '. . . any error as to any matter of procedure' is subject to harmless error analysis and must have resulted in a 'miscarriage of justice' in order for the judgment to be set aside." (*In re Marriage of Goddard* (2004) 33 Cal.4th 49, 56 (*Marriage of Goddard*); accord, *In re Marriage of Jackson* (2006) 136 Cal.App.4th 980, 997 (*Marriage of Jackson*) ["the party challenging the order or judgment must also

_____

[7] According to Father, Mother did not establish that, had the family court followed the UCCJEA's procedures for determining modification jurisdiction, there is a reasonable probability that Mother would have received a more favorable determination: "Here, the fact that the trial judge in California did not contact North Carolina to relinquish jurisdiction[] would not have changed the outcome of the trial court's ruling as no other evidence would have been presented which ultimately was not already presented to the trial Court."

9

demonstrate the error was prejudicial, that is, that it is reasonably probable a result more favorable to that party would have been reached in the absence of the error"]; see Cal. Const., art. VI, § 13; Code Civ. Proc., § 475.)

This general rule, however, is inapplicable where, as here, the trial court has acted in excess of its jurisdiction. Under such circumstances, error has occurred, and the resulting order is "voidable and reversible on appeal even where . . . it is clear from the record [that no prejudice resulted]." (*Marriage of Goddard*, *supra*, 33 Cal.4th at p. 54.) Because the family court's consideration of Mother's RFO (to modify the North Carolina Order) was an act in excess of the California court's jurisdiction—i.e., not merely a procedural error, but a violation of a clear restriction or limitation on the court's power to act[8] (see *Marriage of Goddard*, at p. 57)—the RFO may be reversed without a showing by Mother that she was prejudiced by this error. (See *Marriage of Jackson*, *supra*, 136 Cal.App.4th at pp. 997-998 [termination of parental rights].)

Father contends that " 'failure to comply with the procedural requirements of the UCCJEA is subject to harmless error analysis['] " (quoting *In re Cristian I.* (2014) 224 Cal.App.4th 1088, 1098 (*Cristian I.*) and citing *In re C.T.* (2002) 100 Cal.App.4th 101, 110 (*C.T.*)). More precisely, Father argues that, "if communication between the California trial court and the judicial officer in North Carolina took place, the out of state court would have determined that it no longer had exclusive jurisdiction and that

---

8    In the present case, absent a specified showing and a required determination, the California court was required to stay or dismiss Mother's RFO. (§ 3426, subd. (b).)

10

California would be the more convenient forum under the Family Code."  We disagree with Father's suggestion for a number of reasons.

First, from the section 3429 documents, we know nothing about the North Carolina Action and the proceedings that resulted in the North Carolina Order generally and the A.R. Provision specifically—including, for example, the basis on which the North Carolina Court ordered that Mother is precluded from allowing the children to be in the presence of A.R.  For this reason, Father's suggestion that, had the North Carolina Court been advised of Mother's effort to modify the North Carolina Order, the North Carolina Court "would have determined that it no longer had exclusive jurisdiction" is speculative, and we reject it.

Second, to accept Father's harmless error analysis fails to consider the potential injustice to the North Carolina Court.  One of " 'the primary purposes' " of the UCCJEA " 'is to encourage states to respect and enforce the prior custody determinations of other states, as well as to avoid competing jurisdiction and conflicting decisions.' " (*Fernandez-Abin*, *supra*, 191 Cal.App.4th at p. 1037.)  Under the UCCJEA, as of August 2, 2017, the North Carolina Court had " ' "exclusive, continuing jurisdiction" ' " over the parties' child custody determinations.  (*Fernandez-Abin*, at p. 1040.)  At the time of the May 2018 hearing on Mother's RFO, both California and North Carolina had enacted the UCCJEA (§ 3400 et seq.; N.C. Gen. Stats. § 50A-101 et seq.), and both the parties and the family court knew of the North Carolina Action and the North Carolina Order.  Under such circumstances—in addition to the mandatory language in section 3446, subdivision (b), by which a California court "may not modify, except in accordance with

11

[statutory requirements not established in the present record], a registered child custody determination of a court of another state"—respect and comity also dictate that the California court should have contacted the North Carolina Court before considering modification of the North Carolina Order.[9]

Finally, the harmless error analyses in *Cristian I.*, *supra*, 224 Cal.App.4th 1088, and *C.T.*, *supra*, 100 Cal.App.4th 101, are not persuasive here, since those cases are materially distinguishable. In each of those cases, the juvenile court was exercising its dependency jurisdiction under Welfare and Institutions Code section 300 when, due to prior custody proceedings out of state, the court was required to exercise its "temporary emergency jurisdiction" under the UCCJEA (§ 3424) in order to consider the well-being of the child under California dependency law.[10] (*Cristian I.*, at pp. 1091-1092; *C.T.*, at p. 105.) In this regard, section 3424 provides an exception to the exclusive jurisdictional basis for modifying a sister-state custody order. (§§ 3421, subd. (b), 3423.) Under section 3424, subdivision (a), a California court may exercise "temporary emergency

---

9    "Comity is based on the belief ' " 'that the laws of a state have no force, *proprio vigore,* beyond its territorial limits, but the laws of one state are frequently permitted by the courtesy of another to operate in the latter for the promotion of justice, where neither that state nor its citizens will suffer any inconvenience from the application of the foreign law. This courtesy, or comity, is established, not only from motives of respect for the laws and institutions of the foreign countries, but from considerations of mutual utility and advantage.' " ' " (*Advanced Bionics Corp. v. Medtronic, Inc.* (2002) 29 Cal.4th 697, 707.)

10    The UCCJEA applies to dependency proceedings. (§ 3402, subdivision (d); *In re M.M.* (2015) 240 Cal.App.4th 703, 715 [" 'A dependency action is a ' "[c]hild custody proceeding" ' subject to the UCCJEA.' "].)

12

jurisdiction" when a "child is present in this state and . . . it is necessary in an emergency to protect the child because the child . . . is subjected to, or threatened with, mistreatment or abuse."  An "emergency" exists when there is an immediate risk of danger to the child if the child is returned to a parent.  (*Cristian I.*, at p. 1097.)  In short, the present case—i.e., in which one parent sought to modify an order under which she had been precluded from allowing the children to be in the presence of a specified individual for more than seven months—did not involve either dependency proceedings to remove a child from an abusive situation or an emergency.  Thus, the present case does not involve the same harmless error analysis as in *Cristian I.* and *C.T.*

In summary, the family court's failure to have contacted the North Carolina Court before considering a modification to the North Carolina Order is reversible error.[11] Having been supplied section 3429 documents disclosing that a child custody proceeding had been commenced in the North Carolina Court, the California family court was *required* to "stay its [modification] proceeding and communicate with the court of the other state."  (§ 3426, subd. (b).)

### III.  DISPOSITION

The July 2, 2018 FOAH is reversed.  The parties shall bear their respective costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(5).)

---

[11]    This opinion does not preclude, yet expresses no views regarding, further trial court proceedings related to the North Carolina Order.

13

IRION, J.

WE CONCUR:


BENKE, Acting P. J.


GUERRERO, J.