Filed 8/2/22  In re L.B. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re L.B., a Person Coming Under the Juvenile Court Law. | B313519 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. M.B., Defendant and Appellant. | Los Angeles County Super. Ct. No. 21CCJP00081A |

APPEAL from orders of the Superior Court of Los Angeles County, Stephen C. Marpet, Judge Pro Tempore of the Juvenile Court.  Affirmed.

Jesse F. Rodriguez, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, Stephen Watson, Deputy County Counsel, for Plaintiff and Respondent.

Mother challenges the juvenile court's jurisdiction finding declaring her daughter a dependent of the court and disposition orders on the ground the court exceeded its jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA; Fam. Code., §§ 3400 et seq.).[1]  We affirm.

## BACKGROUND

Mother and father are the parents of L.B., born April 2020. Father is not a party to this appeal.  When this dependency case began in December 2020, mother lived in Los Angeles, and father lived in Iowa.  Mother and father lived together in California from about January 2019 to March 2020, when father moved to Iowa to stay with family.  Mother flew to Iowa in March to visit father, for about three and a half weeks, at paternal grandmother's home.  Mother returned to California in April 2020 and gave birth to L.B.  In June 2020, mother and L.B. visited father in Iowa.  After 28 days, on July 1, 2020, mother returned to California with L.B.

The day before mother left Iowa, on June 30, 2020, father and paternal grandmother allegedly would not let mother leave with the baby.  Police officers arrived, and mother told them she had hit father in the face with the back of her hand after he had pushed her.[2]

---

[1]    Undesignated statutory references are to the Family Code unless otherwise indicated.

[2]    In October 2020, the Iowa Department of Human Services investigated the family based on allegations arising from the June 30, 2020 incident.  The department found the risk to L.B. was minor, isolated, and unlikely to reoccur given mother was living in Los Angeles, and closed the case.

On July 6, 2020, father filed a custody, visitation, and support petition with the Iowa court. In September 2020, the Iowa court determined L.B.'s home state was Iowa. The family division of the Los Angeles Superior Court—where mother had filed an ex parte application—deferred jurisdiction of the matter to the Iowa court. On October 12, 2020, the Iowa court entered a temporary custody order awarding parents joint legal custody of L.B., and awarding mother primary physical care. Parents were to alternate parenting time of L.B. every three weeks.

The Los Angeles County Department of Children and Family Services (Department) became involved with the family in late December 2020. Father had traveled to California for his court-ordered holiday visitation with L.B. He booked a hotel room for a week so he could spend time with L.B. and mother together. On December 28, 2020, father fell asleep or passed out —while lying on the bed with L.B.—after taking medication.[3] Mother, who was leaving for work, could not awaken him and called 911. Paramedics arrived and injected father with something to revive him.[4] Father was taken to the hospital but left without seeing a doctor.

---

[3] Father told the social worker he had taken his prescribed anxiety medication—a form of Xanax—that morning. He said he later took Nyquil because he wasn't feeling well. He then fell asleep while L.B. was in his care, but mother was present to supervise the child. Father revealed he had used marijuana in the past but not since mother became pregnant. Mother said father had a history of abusing prescription drugs and marijuana.

[4] The Department later learned the paramedics gave father Narcan.

On December 30, 2020, mother and father had an argument while in the hotel room with L.B. Father said the argument was over custody, but mother said it was over broken pills and dust she saw on the bathroom counter. Allegedly, mother tried to leave with L.B., but father grabbed her arm and pushed her onto the bed while she was holding L.B. Mother then slapped father. She called the police and was arrested. She was released the next day; the prosecutor declined to file criminal charges.

The Department detained L.B. from father with an emergency removal order. On January 8, 2021, the Department filed a juvenile dependency petition on behalf of L.B. under Welfare and Institutions Code section 300 (section 300), subdivisions (a) and (b)(1), based on: parents' history of engaging in violent verbal and physical altercations in the presence of L.B., including the June 30 and December 30, 2020 incidents; father's history of substance abuse and current abuse of marijuana and prescription medication, including the December 28, 2020 incident; and mother's failure to protect L.B.

At the January 13, 2021 detention hearing, after granting father's request for a one-day continuance, the court made emergency detention findings, temporarily detained L.B. from father, and placed the child in mother's care under the Department's supervision. As the UCCJEA appeared to be an issue, the court ordered parents to submit declarations about their time in California and in Iowa.

The next day, mother and father each filed a declaration as ordered. In her declaration, mother argued California was the appropriate jurisdictional venue. At the continued hearing, the court recognized the ongoing family law case in Iowa and

4

stated it would contact the judge there to see if the dependency matter should be tried in Iowa. The court ordered L.B. remain detained from father and released to mother, granted parents' requests for mutual temporary restraining orders, and granted reasonable monitored visitation in California for father. The court continued the matter to January 28, 2021 to address the UCCJEA/jurisdictional issues further.

On January 28, 2021, the court informed the parties it would be following up with "the out of state judge" about the jurisdictional issues in the case and again continued the matter. On February 4, 2021, the court held a trial setting conference. Counsel and parents were present. The court informed the parties it had spoken to the judge in Iowa and determined California was the appropriate jurisdictional court to hear L.B.'s case.[5]

The court convened a jurisdiction hearing on May 3 and 5, 2021. Parents, maternal and paternal grandmothers, and the emergency response social worker testified. The court found the evidence insufficient to sustain the allegations about father's substance abuse, but sustained the petition's remaining allegations related to parents' violent conduct, amended by interlineation. The court declared L.B. a dependent of the juvenile court, released the child to parents, ordered parents to work out a shared custody arrangement following the terms of the Iowa custody order, and terminated its jurisdiction pending receipt of a juvenile custody order. The court wanted the custody

---

[5] The reporter's transcript of that hearing is not part of the appellate record.

5

order to "indicat[e] just exactly what I've done so . . . the court in Iowa can get a copy of it and understand the status."

The Department moved the court to retain jurisdiction and reopen the case for it to present additional evidence of father's substance abuse. On May 13, 2021, the court denied the Department's motion. It signed and entered a juvenile custody order that mirrored the terms of the Iowa order, stated parents were to follow the custody schedule outlined in the existing Iowa family law order, and referenced the Iowa court case number. The court then terminated its jurisdiction. The next day, the Department and minor's counsel unsuccessfully applied for rehearing. Mother appealed from the court's May 5 and 13, 2021 orders. The Department cross-appealed.[6]

## DISCUSSION

For the first time on appeal, mother contends the juvenile court exceeded the scope of its jurisdiction under the UCCJEA by adjudicating the section 300 petition. She asks us to reverse the jurisdiction finding and vacate the disposition orders. The Department contends mother's appeal must be dismissed because below she argued the juvenile court was the appropriate jurisdictional forum to hear L.B.'s case and expressly consented to the juvenile court exercising its jurisdiction to adjudicate the petition. Mother argues she has not forfeited the issue because the juvenile court's error was not merely a procedural one, but "a violation of a clear restriction or limitation on the court's power to act."

---

[6]     We dismissed the Department's appeal at its request.

6

The issue of whether the UCCJEA confers fundamental subject matter jurisdiction is unsettled. (Compare *In re J.W.* (2020) 53 Cal.App.5th 347, 353, 364–367 (*J.W.*) [holding the "UCCJEA does not govern fundamental jurisdiction," and father could not raise lack of UCCJEA jurisdiction for first time on appeal from juvenile court's order terminating parental rights] with *In re Marriage of Kent* (2019) 35 Cal.App.5th 487, 491–492, 495–496 (*Marriage of Kent*) [parties' stipulation alone that California family court could modify North Carolina court's custody and support order insufficient to establish modification jurisdiction under the UCCJEA; family court's ruling therefore was "an act in excess of" its jurisdiction]; see also *A.M. v. Superior Court* (2021) 63 Cal.App.5th 343, 352, 354–355 (*A.M.*) [concluding mother who objected to family court's continuing jurisdiction under section 3422, but did not object at the outset of the proceeding, did not forfeit jurisdictional challenge on appeal].)

We need not resolve whether the UCCJEA confers "fundamental" subject-matter jurisdiction or simply mandatory jurisdictional rules—as the court in *J.W.* concluded—because we conclude the juvenile court had authority to adjudicate L.B.'s case. (See *J.W., supra*, 53 Cal.App.5th at pp. 357–358 [noting juvenile court has fundamental jurisdiction over children described by section 300; thus once a section 300 petition is filed, "the juvenile court is then ordinarily empowered to evaluate the allegations . . . and declare the minor a dependent of the court"; UCCJEA "on the other hand, embodies an agreement among states on rules to determine which jurisdiction should provide

the proper forum"].)  We do not condone, however, what appears to be forum shopping by mother.[7]

1.    *Applicable law and standard of review*

"The UCCJEA . . . governs dependency proceedings and is the exclusive method for determining the proper forum to decide custody issues involving a child who is subject to a sister-state custody order." (*In re Cristian I.* (2014) 224 Cal.App.4th 1088, 1096 (*Cristian I.*); § 3421, subd. (b) [declaring subdivision (a) of section 3421 "the exclusive jurisdictional basis for making a child custody determination by a court of this state"].)[8]  The Act

---

[7]    We also note the circumstances here are not remotely akin to those in the cases on which mother relies, *A.M.* and *Marriage of Kent*.  Neither of those cases involved a dependency matter. The appellant in *A.M.* had asked the trial court for an order *discontinuing* its jurisdiction, while mother here affirmatively asked the juvenile court to *exercise* its jurisdiction.  The family court in *Marriage of Kent* ruled on appellant's modification motion based on the parties' stipulation without first asking the North Carolina court whether it wanted to exercise its jurisdiction over the issue.  Here, the juvenile court immediately contacted the Iowa court. (*A.M., supra*, 63 Cal.App.5th at pp. 347–348; *Marriage of Kent, supra*, 35 Cal.App.5th at pp. 492, 495.)

[8]    Under section 3421, subdivision (a), a California court has jurisdiction to make an initial custody determination if:  (1) it is the "home state" of the child or was the home state within six months before the proceeding began; (2) there is no home state, or the home state court declines to exercise jurisdiction because this state "is the more appropriate forum" under §§ 3427 or 3428 and (A) the child and at least one parent have a "significant connection" with this state, and (B) substantial evidence is

8

"is designed to avoid jurisdictional conflicts between states and relitigation of custody decisions, promote cooperation between states, and facilitate enforcement of another state's custody decrees." (*In re R.L.* (2016) 4 Cal.App.5th 125, 136.) California and Iowa have adopted the UCCJEA. (See *J.W.*, *supra*, 53 Cal.App.5th at p. 355 ["[t]o date, every state except Massachusetts has enacted the UCCJEA"].)

Even when another state already has issued a custody order, a California juvenile court may exercise "temporary emergency jurisdiction" to issue custody orders to protect a child present in the state and in need of emergency protection because of actual or threatened "mistreatment or abuse." (§ 3424, subd. (a).) The temporary custody order "must specify in the order a period that the court considers adequate to allow the person seeking an order to obtain an order from the state having jurisdiction." (§ 3424, subd. (c); *In re C.T.* (2002) 100 Cal.App.4th 101, 112 (*C.T.*) [emergency jurisdiction may be exercised "to protect a child only on a temporary basis until the court with appropriate jurisdiction issue[s] a permanent order"].)

A jurisdictional finding under the UCCJEA should be made after an evidentiary hearing. (*Cristian I., supra*, 224 Cal.App.4th at pp. 1097, 1099–1100.) A court may find it has—and exercise— temporary emergency jurisdiction at a detention hearing. (*Id.* at

available here "concerning the child's care, protection, training, and personal relationships"; (3) all courts having jurisdiction under the first two grounds have declined to exercise jurisdiction because a court of this state is the more appropriate forum; and (4) no court of any other state would have jurisdiction under the other grounds.

pp. 1099–1100; see also *C.T., supra*, 100 Cal.App.4th at p. 108, fn. 3 [proper to enter interim custody order to protect child pending hearing].)

A court cannot make jurisdiction and disposition findings based on its temporary emergency jurisdiction, however. (*C.T., supra*, 100 Cal.App.4th at pp. 108–109 [juvenile court exercising temporary emergency jurisdiction under the UCCJEA not authorized to make section 300 true finding]; *In re C.W.* (2019) 33 Cal.App.5th 835, 861–862 ["A court exercising temporary emergency jurisdiction under the UCCJEA cannot exercise jurisdiction to determine a child's permanent custody in the face of a competing foreign custody award enforceable under the UCCJEA if . . . the issuing state has not ceded its continuing jurisdiction."].) Thus, a juvenile court "may address the merits of a dependency petition after determining an emergency exists," but must do so under section 3421 or 3423, "which are not emergency jurisdiction provisions." (*C.T.*, at p. 113.)

Once the court is aware a custody order from a state with UCCJEA jurisdiction already exists, the juvenile court exercising emergency jurisdiction must "immediately communicate with the other court." (§ 3424, subd. (d).) "To make an appropriate order under the [UCCJEA], the California court needs to know whether the sister court wishes to continue its jurisdiction and how much time it requires to take appropriate steps to consider further child custody orders." (*C.T., supra*, 100 Cal.App.4th at pp. 110–111.) If the other court declines to exercise its jurisdiction, the juvenile court has jurisdiction under the UCCJEA to proceed with hearing the dependency petition. (§ 3421, subd. (a)(2)–(3) [jurisdiction to make initial custody determination when home state court declines jurisdiction

10

because California is the more appropriate forum]; § 3423, subd. (a) [jurisdiction to modify child custody determination made by another court if that court declines jurisdiction because California is the more convenient forum]; (*Cristian I., supra*, 224 Cal.App.4th at pp. 1095, 1101 [juvenile court had jurisdiction to adjudicate dependency petition after court from Arizona that had issued custody order ceded its jurisdiction to the California court].)

We review the court's interpretation of the UCCJEA de novo, but review for substantial evidence the court's findings of fact in determining jurisdiction under the UCCJEA. (*A.M., supra*, 63 Cal.App.5th at p. 351.)

**2. *The juvenile court had jurisdiction under the UCCJEA to adjudicate the section 300 petition***

Contrary to mother's contentions, the juvenile court had authority to adjudicate the section 300 petition and enter its disposition orders, including the final juvenile custody order. Mother concedes the juvenile court had temporary emergency jurisdiction under section 3424 "to make a limited order to protect L.B." when the Department sought her removal from father. The court properly exercised its temporary emergency jurisdiction at the initial and continued detention hearings, as parents had notice and an opportunity to be heard as required by the UCCJEA: the juvenile court found notice of the hearings was proper; parents, their counsel, and counsel for L.B. and for the Department all were present; the Department presented evidence—through its social worker's report—establishing L.B. required emergency protection based on the allegations of domestic violence and substance abuse; and counsel had the opportunity to argue. (See § 3425, subd. (a) [court must give

11

notice and opportunity to be heard to all persons entitled to notice before making a custody determination under the UCCJEA]; *Cristian I., supra*, 224 Cal.App.4th at pp. 1099–1100 [court that held detention hearing before determining removal of child was necessary to protect him from ongoing threat of serious harm asserted jurisdiction "consistent with, and authorized by, section 3424"].) Not until after it had considered the Department's report and heard from counsel did the court find a prima facie case under section 300 existed supporting L.B.'s removal from father and placement with mother under the Department's supervision.

Although mother agrees the juvenile court had authority under the UCCJEA to detain L.B., she contends that—due to the existing Iowa custody order—the juvenile court's jurisdiction fell under section 3424 alone, precluding it from making its jurisdiction finding and entering its disposition orders. In so arguing, mother asserts the May 3 and 5, 2021 jurisdiction hearing was the *only* evidentiary hearing held under the UCCJEA.[9] She seems to contend section 3424 thus limited

[9] Although not entirely clear, to the extent mother is arguing the juvenile court was required to hold an additional evidentiary hearing to establish its jurisdiction, mother has forfeited the argument—she never asked the court for a hearing. (*In re A.C.* (2017) 13 Cal.App.5th 661, 671–672 [appellate court generally will not consider procedural defects where appellant failed to bring the matter to trial court's attention].) Even if such a hearing were required, as mother advocated for the court to exercise its jurisdiction under the UCCJEA, there was no prejudice. (*Cristian I., supra*, 224 Cal.App.4th at pp. 1099–1100, 1103 [no additional evidentiary hearing necessary where court

the court's findings at the jurisdiction hearing to whether an emergency existed—allowing the court to make temporary orders to protect L.B. (See *C.T., supra*, 100 Cal.App.4th at p. 108 [purpose of section 3424 hearing "is limited to a determination of the existence of an emergency, and under the Act emergency jurisdiction may be exercised to protect the child only on a temporary basis"; assumption of emergency jurisdiction does not confer authority to make "a permanent custody disposition"].) Relying on *C.T.*, mother argues that, although the court's true finding on the section 300 petition was sufficient to establish the required emergency to invoke UCCJEA jurisdiction under section 3424, the UCCJEA did not authorize the court to make the finding, which has "permanent rather than temporary ramifications with regard to custody." (*C.T.*, at p. 108.)

Mother's argument ignores a key fact: the Iowa court *agreed* California was the appropriate jurisdictional forum to hear this dependency matter *before* the juvenile court convened the May 3, 2021 jurisdiction hearing. When the Iowa court ceded its jurisdiction over the matter to the juvenile court, the juvenile court had authority to adjudicate the section 300 petition. Mother's reliance on *C.T.*, therefore, is misplaced.

There, the juvenile court was aware an Arkansas court had issued an earlier custody order concerning the child on whose behalf the California agency had filed a section 300 petition. (*C.T., supra*, 100 Cal.App.4th at pp. 104–105.) After

---

adjudicated dependency petition after out-of-state court ceded jurisdiction; any procedural errors by court under UCCJEA harmless as no impact on dependency outcome demonstrated].)

exercising emergency jurisdiction under the UCCJEA at the detention hearing, the court convened a jurisdiction hearing and made a true finding that the child was a person described by section 300. (*C.T.*, at p. 105.) Only *after* it made its true finding did the juvenile court contact the Arkansas court, which refused to cede jurisdiction and asked the court to transfer the case to Arkansas. (*Ibid.*) The appellate court reversed the true finding, concluding it was outside the scope of the court's temporary emergency jurisdiction. (*Id.* at pp.108–109.)

Here, by contrast, after exercising emergency jurisdiction to detain L.B., the juvenile court gathered evidence from the parties about their time in California and Iowa, and continued the adjudication of the petition so it could contact the court in Iowa "to see if this is a case that should be tried in Iowa." Only *after* the juvenile court spoke to the judge from the Iowa court, and the two courts agreed the California juvenile court was "the appropriate jurisdiction court to hear [L.B.]'s case," did the juvenile court even set a jurisdictional hearing. Thus, unlike the court in *C.T.*, the juvenile court here did not make its jurisdiction findings and disposition orders "under the umbrella of temporary emergency jurisdiction." (*Cristian I., supra*, 224 Cal.App.4th at pp. 1102–1103 [distinguishing court in *C.T.* from juvenile court that did not make jurisdiction findings until *after* sister court determined juvenile court should continue to assert jurisdiction over pending dependency matter].)

Rather, once the Iowa court declined to exercise its jurisdiction over the matter—having determined California was the more appropriate forum—the juvenile court was authorized to continue its jurisdiction, under sections 3421 or 3423,

adjudicate the section 300 petition, make its true finding, and enter the corresponding disposition orders.[10]

Mother does not contend otherwise. Indeed she concedes the juvenile court confirmed with the court in Iowa that it— the California juvenile court—was the appropriate jurisdictional court to hear the dependency petition. Mother merely asserts the juvenile court "had the authority to exercise *only* temporary

_____

[10] The February 4, 2021 minute order does not describe the communication between the juvenile court and the Iowa court in depth. As the reporter's transcript does not include the February 4 hearing, we presume the juvenile court gave more details at the hearing, and we can infer from the circumstances that the Iowa court ceded its jurisdiction after finding California was a more appropriate and convenient forum under section 3427. (*Denham v. Superior Court of Los Angeles County* (1970) 2 Cal.3d 557, 564 (*Denham*) [" 'All intendments and presumptions are indulged to support [the trial court's action] on matters as to which the record is silent, and error must be affirmatively shown.' "]; § 3427, subd. (a) [court may decline to exercise jurisdiction if it determines it is an inconvenient forum].) The juvenile court thus had original jurisdiction to make a custody determination under section 3421 or to modify the Iowa court's custody order under section 3423: (a) the record shows mother and/or L.B. had a "significant connection" with California— mother had lived in California and her family was in California, and L.B. was born in and had lived all but 28 days of her life in California; and (b) "[s]ubstantial evidence" was available in California concerning L.B.'s "care, protection, training, and personal relationships," given mother was raising L.B. in California except when father was able to have L.B. in Iowa for visitation. (§ 3421, subd. (a)(2)(A) & (B), (3); § 3423 [requiring California court to have jurisdiction under § 3421, subd. (a)(2)].)

15

emergency jurisdiction" under section 3424 without addressing the effect the Iowa court's decision not to exercise its jurisdiction over the matter had on the juvenile court's authority to make its jurisdiction findings and disposition orders.[11]

Accordingly, because the juvenile court waited to make its true finding and related disposition orders until after the Iowa court ceded its jurisdiction, it did not act outside its scope of authority under the UCCJEA.

---

[11] We note section 3410 requires the court to make an accessible record of its communications with an out-of-state court about UCCJEA matters. (§ 3410, subds. (d)–(e).) As the appellate record does not include any such record, we presume that the court made one. (*Denham, supra,* 2 Cal.3d at p. 564.) In any event, the failure to do so is a procedural error subject to a harmless error analysis. (*C.T., supra,* 100 Cal.App.4th at pp. 111–112.) As mother has not raised the issue on appeal, or below, much less demonstrated how she was prejudiced by any failure to comply with section 3410, she has forfeited the issue. (*In re S.B.* (2004) 32 Cal.4th 1287, 1293 [objection not made in trial court forfeited on appeal]; *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 [point not raised on appeal treated as forfeited]; see also *Cristian I., supra,* 224 Cal.App.4th at pp. 1101, 1103 [procedural error in failing to communicate directly with sister court did not warrant reversal where there was no showing of prejudice].)

## DISPOSITION

We affirm the juvenile court's May 5 and 13, 2021 findings and orders.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EGERTON, J.

We concur:


EDMON, P. J.


KALRA, J.*

---

*       Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.