Filed 11/18/22  In re Giselle S. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re GISELLE S., a Person Coming Under the Juvenile Court Law. | B316883 (Los Angeles County Super. Ct. No. 21CCJP04251A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> RASHAD S., <br><br> Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County.  Stephen C. Marpet, Judge Pro Tempore.  Affirmed.

Jesse Frederic Rodriguez, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, Acting County Counsel, Kim Nemoy, Assistant County Counsel, and Stephen Watson, Deputy County Counsel, for Plaintiff and Respondent.

* * * * * *

Rashad S. (father) appeals from the juvenile court's jurisdictional and dispositional orders in dependency proceedings for his eight-year-old daughter.  For the first time on appeal, he argues that the juvenile court lacked jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (the Act) (Fam. Code, § 3400 et seq.).[1]  Because the juvenile court did not prejudicially err, we affirm the orders.

## FACTS AND PROCEDURAL BACKGROUND

### I.    Facts

#### A.    *Birth of Giselle*

In August 2014, Giselle S. was born to Salena H. (mother) and father, in Baltimore, Maryland.

#### B.    *Mother flees with Giselle*

Mother and father have a tumultuous relationship.  They lived together in Maryland for approximately one month while mother was pregnant, but separated because father was physically abusive to mother.

---

[1]    All further statutory references are to the Family Code unless otherwise indicated.

2

In early 2016, when Giselle was about 18 months old, mother fled with Giselle to Florida. When father showed up in Florida, mother fled with Giselle to Colorado.

### C.     *Florida family court proceedings*

In September 2017, while mother was still in Colorado with Giselle, father filed for custody of Giselle in Florida state court. When mother did not respond to the filing, the Florida court issued a "default[]" judgment awarding father "sole parental responsibility" over Giselle.

### D.     *Family moves to California in June 2020*

In September 2018, father went to Colorado, obtained custody of Giselle and moved to Los Angeles, California with her. Mother went back to Maryland. In November 2018, father allowed mother to come to Los Angeles to visit Giselle because "he didn't want the full custody" and "mother was the only person Giselle loves and had a connection with."

In January 2019, father admitted he used a belt to "beat" Giselle for lying. Following an investigation conducted by the Los Angeles Department of Children and Family Services (the Department), father was educated on child abuse laws and it was recommended that he not physically discipline Giselle.

 At some point thereafter, father allowed Giselle to live with the paternal grandmother in Maryland, which enabled mother to have frequent contact with Giselle. In early 2020, when mother got sick and was hospitalized, father brought Giselle from Maryland to Los Angeles.

Mother moved to Los Angeles in June 2020, and she and father agreed to share custody of Giselle.

### E.     *California family court proceedings*

In early August 2021, mother discovered bruises on

Giselle's legs, which Giselle stated came from father hitting her with a belt buckle. On August 9, 2021, mother filed for full custody of Giselle and a restraining order against father in the California family court. On August 20, 2021, the California family court granted the request for a restraining order, awarded mother sole legal and physical custody of Giselle, and granted father Facetime visits. Children's Hospital Los Angeles conducted a child abuse evaluation and, on August 30, 2021, concluded the findings were "consistent with physical abuse and the history [was] concerning for neglect and emotional abuse."

## II.     Procedural Background

### A.     *Petition and detention*

On September 9, 2021, the Department filed a petition asking the juvenile court to exert dependency jurisdiction over Giselle based on (1) father's physical abuse of Giselle, which included repeatedly striking her legs with a belt buckle on August 5, 2021, as well as prior incidents of abuse involving the use of a belt, slapping, and punching, which "endangers [Giselle's] physical health, safety, and well-being . . . and places [her] . . . at risk of serious physical harm, damage, danger, and physical abuse" (thereby rendering jurisdiction appropriate under Welfare and Institutions Code section 300, subdivisions (a) and (b)(1)); and (2) mother's failure to protect Giselle because she knew of father's abuse but nevertheless allowed father to reside in the home and have unlimited access to Giselle, which "endangers [Giselle's] physical health, safety, and well-being . . . and places [Giselle] . . . at risk of serious physical harm, damage, [and] physical abuse" (thereby rendering jurisdiction appropriate under Welfare and Institutions Code section 300, subdivision (b)(1)).

4

**B.** *Department contacts Florida courts*

On August 25, 2021, a Department social worker left a voicemail for the child welfare agency in Hillsborough County, Florida, requesting a return call regarding the family's child welfare history. On August 31, 2021, the social worker received an email from the child welfare agency in Hillsborough County, Florida, which stated, "No Hillsborough County Child Protection Records. Possible case in Pinellas County, please contact [telephone numbers] for those records. For a complete check of child protection[] records in Florida make a request a[t] myflfamilies.com." On October 12, 2021, the social worker called the telephone numbers that had been provided in the email from the child welfare agency in Florida but did not receive a return call. The same day, the social worker submitted an "Out of State" child welfare request form via the myflfamilies.com website. The social worker then received a confirmation email that stated, "Thank you, we have received your correspondence. Please expect a response within [seven to] 10 business days." No response was received.

**C.** *Jurisdiction and disposition*

On November 16, 2021, the juvenile court held a jurisdictional and dispositional hearing. The court struck the allegation seeking to hold mother responsible for allowing father access to Giselle, reasoning that mother had been trying to flee from father for years. The court sustained all of the allegations against father, removed Giselle from father's custody, and ordered family reunification services for father and family maintenance services for mother.

**D.** *Appeal*

Father filed this timely appeal.

## DISCUSSION

Father argues that the juvenile court's order awarding mother custody of Giselle during the pendency of this juvenile dependency case implicates the Act, and precludes the court from exerting jurisdiction over Giselle until it complies with the Act's special provisions. We review the meaning of the Act de novo, any factual findings resolving disputed issues for substantial evidence, and the application of the Act to undisputed facts de novo. (*Schneer v. Llaurado* (2015) 242 Cal.App.4th 1276, 1286; *In re Aiden L.* (2017) 16 Cal.App.5th 508, 520 (*Aiden L.*); *In re Isaiah W.* (2016) 1 Cal.5th 1, 9-10.)

The Act "provides the exclusive means for determining the proper forum and subject matter jurisdiction for child custody proceedings involving . . . two states." (*Aiden L.*, *supra*, 16 Cal.App.5th at p. 516; *A.M. v. Superior Court* (2021) 63 Cal.App.5th 343, 349-350 (*A.M.*).) For these purposes, a juvenile dependency case qualifies as a child custody proceeding. (*In re J.W.* (2020) 53 Cal.App.5th 347, 355.) The Act generally sets up a "'first in time'" rule that imbues the first state to make a custody determination with the authority to continue doing so. (*A.M.*, at p. 351; *In re Marriage of Kent* (2019) 35 Cal.App.5th 487, 493 (*Kent*).) However, the Act nevertheless prescribes a variety of paths by which a new state (here, California) may acquire authority to modify the old state's (here, Florida's) earlier custody determination.

One of those paths is relevant here. Under the Act, a second state may "modify a child custody determination made by a court of [the first state] state" if (1) "a court of th[e second] state has jurisdiction to make an initial determination," which occurs when the second state is the child's "home state . . . on the date of

6

the commencement of the [child custody] proceeding" in this case, (§§ 3423, 3421, subd. (a)(1)), and (2) "[a] court of th[e second] state . . . determines that the child[ and] the child's parents . . . do not presently reside in the [first] state" (§ 3423, subd. (b); see also § 3422, subd. (a)(2)). (*A.M.*, *supra*, 63 Cal.App.5th at p. 351 [explaining this path]; *Kent*, *supra*, 35 Cal.App.5th at p. 494; cf. *In re Marriage of Nurie* (2009) 176 Cal.App.4th 478, 504 ["[I]t is not enough that a jurisdiction qualify factually as the child's home state for the courts to exercise modification jurisdiction."].) The Act defines a child's "home state" as "the state in which a child lived with a parent"—that is, was "physical[ly] presen[t]"— "for at least six consecutive months." (§ 3402, subd. (g); *Aiden L.*, *supra*, 16 Cal.App.5th at p. 518.)

The requirements of this path are met here. It is undisputed that Giselle has been physically present in California since June 2020. Thus, California was Giselle's "home state" on the date that the Department filed this dependency proceeding in September 2021. It is also undisputed that Giselle, father, and mother presently reside in California and thus "do not presently reside" in Florida (Gov. Code, § 244, subd. (b) ["There can only be one residence."]); indeed, the record indicates that the last contact any of them *had* with Florida was in 2017, when father acquired the first child custody order through mother's default. Admittedly, the juvenile court in this case was not able to make a determination that Giselle, father, and mother do not live in Florida, but that is because father raised this issue for the first time on appeal. However, *we*—as a California court—have made a determination on this issue based on the undisputed evidence, and that suffices; remanding so that the juvenile court can make the same finding would be an "idle act and 'a waste of ever-more-

7

scarce judicial resources.'" (*People v. Ledbetter* (2014) 222 Cal.App.4th 896, 904; *In re Dannenberg* (2009) 173 Cal.App.4th 237, 256.)

In light of our analysis, we need not address the parties' remaining arguments regarding whether the Act's *other* paths for asserting jurisdiction over child custody (such as the path that requires that the California court contact the Florida court) have been satisfied.

## DISPOSITION

The juvenile court's jurisdiction findings and disposition orders are affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
HOFFSTADT

We concur:


_____, P. J.
LUI


_____, J.\*
BENKE

---

\*      Retired Associate Justice of the Court of Appeal, Fourth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.