Filed 3/25/24  Marriage of Van Der Veer and Regalbuto CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# SECOND APPELLATE DISTRICT

# DIVISION THREE

| | |
|---|---|
| In re Marriage of LOTTE VAN DER VEER and MICHAEL REGALBUTO. | B326982 |
| | (Los Angeles County Super. Ct. No. SD031662) |
| LOTTE VAN DER VEER, Respondent, v. MICHAEL REGALBUTO, Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Mark A. Juhas, Judge.  Affirmed.

The Law Office of Aaron Leetch and Aaron J. Leetch for Appellant.

Susan E. Wiesner, A Law Corporation, Susan Wiesner; DLA Piper, Justin R. Sarno and Noorvik Minasian for Respondent.

———————————————

Appellant Michael Regalbuto challenges a trial court order requiring him to pay $25,000 in attorney fees and costs as sanctions to Lotte Van Der Veer under Family Code section 271.[1] Regalbuto and Van Der Veer are former spouses who share a minor daughter, J.R. After the family law court granted Van Der Veer sole custody of J.R., she obtained the court's permission to move from California to Texas with J.R. Regalbuto asserts that he also moved to Texas.

Although no party sought modification of any of the family court's orders, and no party initiated proceedings in a Texas court, Regalbuto filed a request in the trial court for an order declaring California no longer has exclusive, continuing jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) (§ 3400 et seq.) to make non-emergency custody or visitation orders regarding J.R. Regalbuto also sought sanctions against Van Der Veer for refusing to stipulate that California no longer has UCCJEA jurisdiction. Van Der Veer opposed the request and requested sanctions against Regalbuto for filing a frivolous request.

———————————————

[1] All further undesignated statutory references are to the Family Code.

The parties were previously before us in a different matter, *In re Marriage of Van Der Veer and Regalbuto* (Sept. 16, 2022, B310897 [nonpub. opn.]), which also involved sanctions assessed against Regalbuto under section 271.

The trial court denied Regalbuto's request and awarded sanctions to Van Der Veer, concluding Regalbuto sought an impermissible advisory opinion regarding the court's jurisdiction. On appeal, Regalbuto argues the trial court misinterpreted the UCCJEA and, even if it did not, his request was based on a reasonable interpretation of the statute and his conduct did not warrant sanctions.

We conclude the trial court did not abuse its discretion in awarding sanctions. Regalbuto's request for a finding on jurisdiction was not justiciable. Courts may not issue purely advisory opinions. While the UCCJEA sets forth criteria for the court to determine whether it has exclusive, continuing jurisdiction to modify a previous custody determination, it does not create an exception to the fundamental principle that, to be justiciable, an action must be ripe and founded on an actual controversy. The order is affirmed.

**FACTUAL AND PROCEDURAL BACKGROUND**

Van Der Veer has had sole legal and physical custody of J.R. since 2015. In August 2020, the trial court issued a domestic violence restraining order against Regalbuto. As relevant here, the restraining order prohibits Regalbuto from having any contact with J.R. or Van Der Veer. The order expires in August 2025.

In 2022, Regalbuto, through legal counsel, twice asked Van Der Veer to stipulate that California no longer has jurisdiction under the UCCJEA to make non-emergency custody and visitation orders concerning J.R. Van Der Veer refused both requests.

In September 2022, Regalbuto filed a request for order asking the trial court to "[f]ind that this Court no longer has

exclusive, continuing jurisdiction over the [m]inor [c]hild per the UCCJEA" to make custody and visitation orders, since all parties had moved to Texas. Regalbuto asked the court "to relinquish jurisdiction so that a much more convenient forum, for both parties, can make further custody and visitation orders . . . ." He also asked the court to issue sanctions against Van Der Veer under section 271 for refusing to stipulate that California no longer has UCCJEA jurisdiction in the case.

Van Der Veer opposed Regalbuto's request. She argued that because there was no custody dispute pending in either California or Texas, the UCCJEA was not triggered, thus Regalbuto was merely seeking an advisory opinion. She also asserted that Regalbuto has not, in fact, permanently relocated to Texas. She attached evidence to support this claim. Finally, Van Der Veer requested sanctions against Regalbuto under section 271 for filing a frivolous request. Regalbuto filed a reply brief, to which he attached his own declaration and evidence to support his claim that he has indeed relocated to Texas.

In January 2023, the trial court denied Regalbuto's request for a determination of the court's continuing jurisdiction. The court reasoned that Regalbuto had neither requested any substantive relief, such as modification of a prior custody order, nor filed any action in Texas regarding J.R.'s custody. The court stated it was not clear what Regalbuto sought to accomplish with his request, except to obtain an advisory opinion as to jurisdiction under the UCCJEA. Further, the court expressed concern that if it terminated jurisdiction over J.R.'s custody without first relinquishing it to another court, J.R. would be "in limbo."

The trial court subsequently denied Regalbuto's request for sanctions and granted Van Der Veer's. The court concluded

4

Regalbuto's request for a prospective jurisdictional determination was unreasonable and Van Der Veer was required to investigate whether Regalbuto is residing in Texas to defend against the request. The court ordered Regalbuto to pay $25,000 in attorney fees and costs as sanctions under section 271.

Regalbuto timely appealed.

DISCUSSION

Regalbuto argues the sanctions order should be reversed because the court misinterpreted section 3422, subdivision (a)(2). He alternatively contends that even if the trial court's interpretation of the law was correct, his UCCJEA arguments were reasonable and sanctions thus improper. We disagree.

I. **The Trial Court Did Not Abuse Its Discretion in Awarding Sanctions Under Section 271**

    A. **Section 271**

Under section 271, a trial court has the discretion to award attorney fees and costs as sanctions.[2] (*In re Marriage of Rangell* (2023) 95 Cal.App.5th 1206, 1218 (*Marriage of Rangell*); § 271, subd. (a).) "Section 271 provides the court with a powerful weapon to curb obstreperous conduct in family law proceedings

---

[2] At the time of the trial court's decision, the statute provided: "[T]he court may base an award of attorney's fees and costs on the extent to which the conduct of each party or attorney furthers or frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys. An award of attorney's fees and costs pursuant to this section is in the nature of a sanction." Section 271 was amended effective January 1, 2024. The amendments do not relate to the issues in this case and do not affect our analysis. (§ 271, as amended by Stats. 2023, ch. 67, § 1.)

by assessing attorney fees and costs as a sanction for frustrating the policy of the law to promote settlement and reduce litigation costs." (*Marriage of Rangell*, at p. 1219.)

We review an award under section 271 for an abuse of discretion. (*Marriage of Rangell*, *supra*, 95 Cal.App.5th at p. 218.) "Under this standard of review, the trial court's order will be upheld on appeal unless, considering all the evidence viewed most favorably in support of the order and indulging all reasonable inferences in its favor, no judge could reasonably make the order." (*Ibid.*) However, " '[t]he scope of discretion always resides in the particular law being applied, i.e., in the "legal principles governing the subject of [the] action . . . ." Action that transgresses the confines of the applicable principles of law is outside the scope of discretion and we call such action an "abuse" of discretion.' [Citation.]" (*Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359, 393.)

## B. Regalbuto's request for order was not justiciable

Regalbuto first contends the sanctions award was an abuse of discretion because it was based on the trial court's misapplication of the UCCJEA. We independently review the proper interpretation of the UCCJEA and the trial court's determination that Regalbuto's request was not justiciable. (*In re Kayla W.* (2023) 97 Cal.App.5th 99, 186; *A.M. v. Superior Court* (2021) 63 Cal.App.5th 343, 351 (*A.M.*); *Redondo Beach Waterfront, LLC v. City of Redondo Beach* (2020) 51 Cal.App.5th 982, 1000.)

### i. Justiciability

"California courts will decide only justiciable controversies." (*Wilson & Wilson v. City Council of Redwood City*

6

(2011) 191 Cal.App.4th 1559, 1573 (*Wilson & Wilson*).) "The concept of justiciability is a tenet of common law jurisprudence and embodies '[t]he principle that courts will not entertain an action which is not founded on an actual controversy . . . .' [Citations.]" (*Ibid.*)

The doctrine of justiciability concerns both ripeness and mootness.[3] (*Wilson & Wilson, supra,* 191 Cal.App.4th at p. 1573.) " 'A controversy is "ripe" when it has reached, but has not passed, the point that the facts have sufficiently congealed to permit an intelligent and useful decision to be made.' [Citation.]" (*Pacific Legal Foundation v. California Coastal Com.* (1982) 33 Cal.3d 158, 171 (*Pacific Legal Foundation*).) The ripeness requirement is intended to prevent courts from issuing purely advisory opinions. (*Id.* at p. 170; *In re Joshua S.* (2007) 41 Cal.4th 261, 273.) "It is rooted in the fundamental concept that the proper role of the judiciary does not extend to the resolution of abstract differences of legal opinion." (*Pacific Legal Foundation*, at p. 170.) Thus, to be justiciable, a case must "concern a present, concrete, and genuine dispute as to which the court can grant effective relief . . . ." (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1489.) " 'The controversy must be definite and concrete . . . admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical set of facts.' " (*Pacific Legal Foundation*, at p. 171.)

---

[3]     Only ripeness is relevant here. Moot cases are those " 'in which an actual controversy did exist but, by the passage of time or a change in circumstances, ceased to exist.' [Citation.]" (*Catlin Ins. Co., Inc. v. Danko Meredith Law Firm, Inc.* (2022) 73 Cal.App.5th 764, 774 (*Catlin Ins.*).)

### ii. The UCCJEA

"The UCCJEA is the exclusive method for determining subject matter jurisdiction for child custody proceedings in California . . . ." (*In re C.W.* (2019) 33 Cal.App.5th 835, 859.)  The UCCJEA " 'arose out of a conference of states in an attempt to deal with the problems of competing jurisdictions entering conflicting interstate child custody orders, forum shopping, and the drawn out and complex child custody legal proceedings often encountered by parties where multiple states are involved.' [Citations.]" (*In re J.W.* (2020) 53 Cal.App.5th 347, 354–355 (*J.W.*).)

"One of the 'primary purposes' of the UCCJEA is ' "to encourage states to respect and enforce the prior custody determinations of other states, as well as to avoid competing jurisdiction and conflicting decisions." ' [Citation.]" (*Segal v. Fishbein* (2023) 89 Cal.App.5th 692, 702 (*Segal*).)  Accordingly, under the UCCJEA, only one state has jurisdiction to make child custody decisions at a time.[4] (*Segal*, at p. 702.)  California has adopted the UCCJEA.[5]  In California, the law is codified at

---

[4]   A "child custody determination" is "a judgment, decree, or other order of a court providing for the legal custody, physical custody, or visitation with respect to a child.  The term includes a permanent, temporary, initial, and modification order." (§ 3402, subd. (c).)

[5]   We grant Regalbuto's request that we take judicial notice of Texas Family Code section 152.313, incorporating the UCCJEA. (Evid. Code, § 452, subd. (a).)  All citations to sections of the UCCJEA are to the model code, Uniform Child Custody Jurisdiction and Enforcement Act of 1997, section 101 et seq., drafted by the National Conference of Commissioners on Uniform

Family Code section 3400 et seq. (*Segal*, at p. 702; *J.W.*, *supra*, 53 Cal.App.5th at p. 355 [every state except Massachusetts has enacted the UCCJEA].)

A California court has jurisdiction to make an initial child custody determination if, among other bases, California is the child's home state when the proceeding is commenced. (§ 3421, subd. (a)(1)–(4).) The home state is "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding." (§ 3402, subd. (g).)

Once a California court obtains initial jurisdiction and makes a custody determination, it retains "exclusive, continuing jurisdiction" over the determination as the issuing state until either "(1) [a California court] determines that neither the child, nor the child and one parent, nor the child and a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships," or (2) a California court "or a court of another state determines that the child, the child's parents, and any person acting as a parent do not presently reside in [California]." (§ 3422, subd. (a)(1), (2).)[6]

Other provisions of the UCCJEA facilitate the recognition and enforcement of a court's custody orders in other states.

_____

State Laws. (9IA West's U. Laws Ann. (2019) UCCJEA, p. 459, et seq.)

[6] See 9IA West's Uniform Laws Annotated (2019) Uniform Child Custody Jurisdiction and Enforcement Act, section 202, pages 510–511.

Under section 3443, subdivision (a), a court is required to "recognize and enforce a child custody determination of a court of another state" if the issuing court exercised jurisdiction in "substantial conformity" with the UCCJEA, "or the determination was made under factual circumstances meeting the jurisdictional standards" of the UCCJEA and "the determination has not been modified in accordance" with the UCCJEA.[7]  Section 3445 also sets forth a procedure by which a child custody determination issued by a court in one state may be registered in a court in another state, "with or without a simultaneous request for enforcement . . . ."[8]  (§ 3445, subd. (a).)

### iii.    Discussion

Justiciability is a threshold issue.  (*Consumer Advocacy Group, Inc. v. Kintetsu Enterprises of America* (2006) 141 Cal.App.4th 46, 57.)  There are two questions we must consider to determine whether an issue is ripe: "First, a controversy is ripe for adjudication ' "when it has reached, but has not passed, the point that the facts have sufficiently congealed to permit an intelligent and useful decision to be made." ' [Citation.]  Second, a controversy is ripe if withholding a decision would result in hardship to the parties."  (*City of Santa Maria v. Adam* (2019) 43 Cal.App.5th 152, 162, quoting *Pacific Legal Foundation, supra,* 33 Cal.3d at pp. 171, 172–173.)

---

[7]    See 9IA West's Uniform Laws Annotated (2019) Uniform Child Custody Jurisdiction and Enforcement Act, section 303, page 546.

[8]    See 9IA West's Uniform Laws Annotated (2019) Uniform Child Custody Jurisdiction and Enforcement Act, section 305, page 549.

10

Regalbuto's request did not meet the first test of ripeness. Section 3422 concerns the court's modification jurisdiction. It is one of several provisions that, together, "provide a comprehensive, integrated system designed to provide that one— and only one—court may exercise jurisdiction over custody determinations at any given time." (*In re Marriage of Nurie* (2009) 176 Cal.App.4th 478, 498 (*Marriage of Nurie*).) Yet, in filing his request, Regalbuto did not seek to modify the existing custody or visitation order, thereby giving the trial court a reason to determine whether it retained jurisdiction to do so. (*Segal*, *supra*, 89 Cal.App.5th at p. 702 ["when a California court is asked to make . . . a modified custody determination, UCCJEA jurisdictional requirements must be satisfied"].) Nor was there a pending motion that invoked any court's jurisdiction to make further custody or visitation orders. (Cf. *A.M.*, *supra*, 63 Cal.App.5th at p. 355 [where mother and minor had moved out of state, considering whether the trial court retained jurisdiction to consider pending motion for grandparent visitation].)

Likewise, there was no custody proceeding in Texas, such that the California court needed to determine whether it retained exclusive jurisdiction under the UCCJEA or was required to cede it to the Texas court. (*Marriage of Nurie*, *supra*, 176 Cal.App.4th at p. 498 [considering whether a California trial court retained jurisdiction to modify its prior custody order after mother moved out of state and obtained a conflicting custody order from Pakistan].)

Nothing in the language of section 3422, subdivision (a)(2), or any other provision in the UCCJEA, requires a court to make findings regarding its continuing jurisdiction in advance of the initiation of a proceeding for which such findings would be

11

relevant.[9]  In *Marriage of Nurie*, the court explained the critical question in determining where the parties " 'presently reside' " under section 3422, subdivision (a)(2) is not whether the parties are residing out of state, but whether they have *stopped* residing in California.  (*Marriage of Nurie, supra*, 176 Cal.App.4th at p. 499.)  As the facts of this case illustrate, parties' geographic residencies are not set in stone.  Until there is an actual controversy and a court is asked to exercise its jurisdiction to modify a custody determination, the facts relevant to modification jurisdiction are subject to change.  A jurisdictional determination that is temporally disconnected from a party's request that a court exercise that jurisdiction would risk a premature and potentially unwarranted divestment of exclusive, continuing jurisdiction.  (Cf. *Marriage of Nurie*, at p. 505 [rejecting idea of "wandering jurisdiction" under UCCJEA].)

In this case, no request for modification was pending, there was no representation that such a request was imminent, and there was a dispute as to whether all parties had in fact stopped residing in California.  The facts had not " 'sufficiently congealed to permit an intelligent and useful decision to be made' " with respect to *prospective* modification jurisdiction, which was the only conceivable purpose of the request for the determination.  (*Pacific Legal Foundation, supra*, 33 Cal.3d at p. 171.)

---

[9]     Section 3422, subdivision (a) offers two alternative bases for a court to determine it does not have exclusive, continuing jurisdiction to modify its prior custody determination.  Throughout this litigation, Regalbuto has limited his arguments to section 3422, subdivision (a)(2).  We therefore do not consider section 3422, subdivision (a)(1) in detail.

12

Regalbuto further has not demonstrated he would suffer hardship absent an immediate decision.  On appeal, Regalbuto contends that requiring that the modification jurisdiction determination be made in connection with a request for modification would be "absurd" and "wasteful," in that he might commence a modification proceeding in one state only to have the court conclude it does not have jurisdiction to modify the custody orders.  This concern does not constitute the hardship required to render a controversy ripe.  The need to resolve threshold questions regarding the proper forum or jurisdiction is a commonplace feature of litigation.  It does not justify a separate, anticipatory proceeding that divorces the threshold issue from the actual controversy.

Moreover, the UCCJEA itself provides mechanisms for threshold jurisdictional issues to be resolved in connection with the underlying custody proceeding while conserving judicial and party resources.  Section 3422, subdivision (a)(2) specifically provides that either California *or a court of another state* may make the determination that the child, child's parents, and any person acting as a parent do not presently reside in California.  The official comment to the corresponding text in the uniform law notes: "If the child, the parents, and all persons acting as parents have all left the State which made the custody determination prior to the commencement of the modification proceeding, considerations of waste of resources dictate that a court in State B, as well as a court in State A, can decide that State A has lost exclusive, continuing jurisdiction."  (9IA West's U. Laws Ann. (2019) UCCJEA, com. 2 to § 202, p. 512; see *A.M.*, *supra*, 63 Cal.App.5th at p. 355, fn. 9 [" 'The official commentary from the drafters of the UCCJEA is entitled to substantial weight' "].)

13

Similarly, under section 3423, a court of this state may not modify a child custody determination made by a court of another state unless the issuing court determines it no longer has exclusive, continuing jurisdiction under section 3422, or *either* a court of this state *or the issuing state* determines the child, the child's parents, and any person acting as a parent do not presently reside in the issuing state.  The UCCJEA further provides for communication between courts, which facilitates the expeditious resolution of jurisdictional questions.  (§ 3410.)[10]

On appeal, Regalbuto does not directly address issues of justiciability and ripeness.  Instead, he asserts that section 3422, subdivision (a)(2) allowed him to file his request.  He points to the text of the statute, which, as noted above, provides that a court of this state that issued a custody determination has exclusive, continuing jurisdiction until "[a] court of this state . . . determines that the child, the child's parents, and any person acting as a parent do not presently reside in this state."  He contends he merely asked for this determination.

For the reasons expressed above, we disagree that section 3422, subdivision (a)(2) creates an exception to general justiciability principles.  Section 3422 concerns the court's jurisdiction to modify an existing child custody determination.  While section 3422, subdivision (a) indicates the issuing state will

---

[10]    The trial court referenced these procedures, stating: "Here's how the UCCJEA works.  When there is a case in Texas, or if there is ever a case in Texas, the Texas judge will then contact me as the decree[ ] state, and we will have a hearing or not, depending on what the Texas judge and I talk about it."  (See *Segal*, *supra*, 89 Cal.App.5th at pp. 700, 706–707 [jurisdictional conference between California and Virginia courts]; 9IA West's U. Laws Ann. (2019) UCCJEA, § 110, p. 497.)

14

have exclusive, continuing jurisdiction until one of two determinations is made, it does not set forth or suggest any procedure that would require a court to *make* that determination in the absence of an actual or impending invocation of a court's modification jurisdiction.

Regalbuto's reliance on *A.M.*, *supra*, 63 Cal.App.5th 343, is unavailing. In *A.M.*, the appellate court considered the trial court's exclusive, continuing jurisdiction under section 3422, subdivision (a)(2) in the context of a pending motion for grandparent visitation. The appellate court considered whether the trial court had ongoing jurisdiction to adjudicate the grandparents' pending request for court-ordered visitation after the mother and child moved out of state. (*Id*. at pp. 347–348.) Here, however, there was no pending motion before the trial court that required the court's exercise of its jurisdiction over the custody determination. *A.M.* did not consider or hold that when there is no pending, actual controversy, section 3422, subdivision (a)(2) entitles a party to a judicial determination of jurisdiction.[11]

---

[11]  To the extent the *A.M.* decision could be read as holding a court must make a jurisdictional determination under section 3422, subdivision (a)(2) even in the absence of a pending proceeding in another state, that holding would not suggest an outcome in this case as there was no pending proceeding in the California family court requiring the exercise of the court's modification jurisdiction. It is the absence of an actual controversy that creates the justiciability problem in this case, rather than the mere absence of an active proceeding in another state. The trial court acknowledged this when it explained that Regalbuto was not seeking any substantive relief, in *any* court.

Indeed, Regalbuto has not identified a single case, treatise, or other authority to support his contention that despite the absence of a request for modification in any state, he was entitled to have the court make an abstract, free-floating determination of whether it had continuing, exclusive UCCJEA jurisdiction to modify the prior custody determination.  Or, as his counsel suggested at the trial court hearing, that Regalbuto was entitled to have the California court "relinquish" jurisdiction over the custody determination, even though no party had asked for any relief or order that would necessitate the exercise of jurisdiction in any court.  Our independent research of section 3422 reveals only cases in which the jurisdictional determination was made, or should have been made, in connection with requests for additional custody determinations or modification of custody determinations.  (See, e.g., *Segal*, *supra*, 89 Cal.App.5th 692 [continuing jurisdiction issue decided in context of father's request that California court modify Virginia custody order]; *Marriage of Nurie*, *supra*, 176 Cal.App.4th 478 [continuing jurisdiction decided in context of wife's attempt to register and enforce competing foreign custody determination]; cf. *In re Marriage of Kent* (2019) 35 Cal.App.5th 487, 495 (*Marriage of Kent*) [trial court erred in modifying out-of-state custody order without first obtaining or determining modification jurisdiction under § 3423].)

Cases in other jurisdictions addressing similar issues are also persuasive.  For example, in *Nordike v. Nordike* (Ky. 2007) 231 S.W.3d 733 (*Nordike*), the Supreme Court of Kentucky considered whether a Kentucky court had jurisdiction to modify a Kansas court's child support order under the Uniform Interstate

Family Support Act (UIFSA).[12] The mother and child had moved to Kentucky from Kansas. The mother filed a motion that the Kentucky Supreme Court characterized as requesting that the Kentucky court "declare that it had jurisdiction over child support, so [the mother] could at some time in the future ask that support be modified." (*Id.* at p. 738.)

The *Nordike* court determined the issue of its jurisdiction was not "ripe" for adjudication, reasoning that until mother made a demand for child support, there was no " ' "justiciable issue before the Court" ' " because "the question of the court's authority to modify child support does not arise until it is actually put in dispute by the motion." (*Nordike, supra*, 231 S.W.3d at p. 739.) It explained it could not "render advisory opinions," and "[t]he question of a court's jurisdiction by itself, much like any dispute over a pure question of law not grounded in an actual claim, simply is not 'a present actual controversy.' " (*Ibid.*)

Similarly, in *King v. King* (N.Y.App.Div. 1998) 251 A.D.2d 1028 (*King*), a New York appellate court refused to consider the question of a California court's future jurisdiction over a New York child custody order, recognizing "the issue of jurisdiction in future proceedings must await an actual controversy." (*Id.* at p. 1029; see *King v. King* (N.Y.App.Div. 2005) 15 A.D.3d 999, 1000.) As in *Nordike* and *King*, Regalbuto's request that the trial

---

[12] Similar to the UCCJEA, the UIFSA creates "continuing, exclusive jurisdiction" to ensure that only one state at a time has jurisdiction to make and modify a child or spousal support order. (§§ 5700.205, 5700.211; see *In re Marriage of Haugh* (2014) 225 Cal.App.4th 963, 969 [court lacked jurisdiction to modify child support under UIFSA where mother, father, and child no longer lived in California at time of request].)

court determine the status of its jurisdiction was not justiciable and must await an actual controversy.

In sum, the principle that California courts "will decide only justiciable controversies" is a tenet of common law jurisprudence that courts will " 'not entertain an action which is not founded on an actual controversy . . . .' [Citations.]" (*Wilson & Wilson*, *supra*, 191 Cal.App.4th at p. 1573.) The UCCJEA does not create an exception to this fundamental precept. Regalbuto did not seek modification of the court's custody orders or otherwise request actual relief with respect to a child custody determination in California or in Texas. The issue of modification jurisdiction was not ripe. The trial court therefore properly declined to issue what would effectively have been an advisory opinion. (*Young v. Young* (1950) 100 Cal.App.2d 85, 86 [affirming dismissal of suit because there was no " 'genuine and existing controversy, calling for present adjudication' " where plaintiff sought to establish the existence of a divorce decree from another state but did not argue defendant failed to comply with its terms]; *Branick v. Downey Savings & Loan Assn.* (2006) 39 Cal.4th 235, 243 ["we will not attempt to render an advisory opinion on a motion plaintiffs have not yet filed"]; *Catlin Ins.*, *supra*, 73 Cal.App.5th at p. 774 [finding trial court justified in not ruling on a moot anti-SLAPP motion only "for the purposes of establishing entitlement to a request for fees, *as no such request had yet been made*. To conclude otherwise would require the court to have issued an advisory opinion"], italics added.)

The trial court did not misinterpret section 3422. It therefore could properly consider Regalbuto's disregard of fundamental justiciability requirements in determining whether to assess sanctions.

## C. The trial court's sanctions award was not an abuse of discretion

The trial court based the sanctions award on its finding that in the absence of the commencement of an action in Texas, or a request for modification of the existing custody orders, "[i]t is not at all clear to the Court what [Regalbuto] is trying to accomplish, except an advisory opinion as to jurisdiction under the UCCJEA." The court found sanctions were warranted because Van Der Veer had to conduct "some investigation" to defend against Regalbuto's request, yet "there is no real request before the Court regarding the minor child." The court also cited the parties' "lengthy litigation history," which, the court concluded, caused Van der Veer to "move[ ] to Texas with her family."

A court may award sanctions against a party who has " 'unreasonably increased the cost of litigation.' [Citation.]" (*In re Marriage of Blake & Langer* (2022) 85 Cal.App.5th 300, 310 (*Marriage of Blake & Langer*); *In re Marriage of Corona* (2009) 172 Cal.App.4th 1205, 1227.) This includes the filing of unwarranted or meritless claims. (*Parker v. Harbert* (2012) 212 Cal.App.4th 1172, 1175 (*Parker*) [awarding sanctions where no "objective party" could view the evidence as warranting the contempt allegations filed by sanctioned party]; *Marriage of Blake & Langer*, at p. 310 [affirming sanctions order for "frivolous motion"].) "[C]onduct falling short of bad faith may be considered by a court in awarding attorney fees" in the form of sanctions. (*In re Marriage of Norton* (1988) 206 Cal.App.3d 53, 59 (*Marriage of Norton*).) This includes the sanctioned party's history of filing claims to harass the other party and of filing meritless claims. (*In re Marriage of Burgard* (1999) 72 Cal.App.4th 74, 82

[considering prior meritless claim]; *Marriage of Norton*, at p. 59 [considering several prior claims to "harass" former spouse].)

Regalbuto contends he reasonably believed he was permitted to file the request for relinquishment of jurisdiction under section 3422, subdivision (a)(2). He asserts his request was not so devoid of merit that sanctions were warranted and, prior to filing the request, he asked Van Der Veer to stipulate that California no longer has jurisdiction.

We find no abuse of discretion. As explained above, the trial court did not misinterpret the law. Regalbuto requested an advisory opinion as to jurisdiction with no apparent immediate purpose. It has long been established that California courts will not issue advisory opinions. (*People ex rel. Lynch v. Superior Court* (1970) 1 Cal.3d 910, 912.) The trial court did not exceed the bounds of reason in finding that Regalbuto's request for a jurisdictional determination, untethered to any request for a modification of the court's prior orders in any court, was unreasonable.

Further, Regalbuto's effort to obtain Van Der Veer's stipulation that California no longer has UCCJEA jurisdiction did not make his request more reasonable, as courts have held " '[t]here is no provision in the UCCJEA for jurisdiction . . . by stipulation, consent, waiver, or estoppel.' [Citation.]" (*In re Marriage of Fernandez-Abin & Sanchez* (2011) 191 Cal.App.4th 1015, 1040; *Marriage of Kent*, *supra*, 35 Cal.App.5th at p. 495 [trial court *erred* in accepting parties' agreement that California had UCCJEA jurisdiction rather than independently determining whether it had modification jurisdiction].)

Regalbuto's request unreasonably increased the costs of litigation for Van Der Veer—who had to defend against the

request by gathering and submitting evidence that Regalbuto had not moved to Texas—even though there was no corresponding request to modify the custody order. (*Marriage of Blake & Langer, supra*, 85 Cal.App.5th at p. 310.) Even if, as Regalbuto argues, his request was not wholly frivolous, "the court was authorized to impose sanctions even in the absence of a finding of frivolity" because his conduct was meritless and "wasted" the court's and Van Der Veer's time. (*Parker, supra*, 212 Cal.App.4th at pp. 1177, 1178.)

## II. Van Der Veer's Motion for Appellate Sanctions Is Denied

Van Der Veer seeks appellate sanctions against Regalbuto based on his failure to provide this court with an adequate appendix. The appellant's appendix included a declaration Van Der Veer submitted in opposition to Regalbuto's request for order, but the appendix omitted all of the exhibits attached to the declaration. Van Der Veer subsequently moved to augment the record with the omitted exhibits.[13] Regalbuto opposed the motion, arguing certain exhibits were properly excluded under applicable rules and case law. Van Der Veer asserts Regalbuto "affirmatively omitted" the exhibits, in violation of California Rules of Court, rule 8.124(g), which requires that an appendix contain "accurate" copies of documents in the superior court file.

Under California Rules of Court, rule 8.276, this court has the discretion to impose sanctions against any party or attorney for committing any unreasonable violation of the court rules. California Rules of Court, rule 8.124(g) further authorizes this

---

[13] We denied Van Der Veer's motion to augment the record but allowed her to include the omitted documents in a respondent's appendix.

21

court to impose sanctions for the filing of an appendix that contains inaccurate copies of documents.

Regalbuto's failure to include a complete copy of Van Der Veer's declaration appears to have violated California Rules of Court, rule 8.124(g). His opposition to Van Der Veer's subsequent request to provide the court with a corrected copy of the declaration further calls into question whether the omission was deliberate and, indeed, Regalbuto has not claimed the omission was inadvertent.

However, we also acknowledge the Advisory Committee comment to California Rules of Court, rule 8.124(g), which notes that sanctions under the rule "do not depend on the degree of culpability of the filing party—i.e., on whether the party's conduct was willful or negligent—but on the nature of the inaccuracies and the importance of the documents they affect." Courts applying a former version of the rule have come to similar conclusions. (*Collisson & Kaplan v. Hartunian* (1994) 21 Cal.App.4th 1611, 1620 [defects in preparation of an appendix, including omission of many documents, did not justify imposition of sanctions]; *Clean Air Transport Systems v. San Mateo County Transit Dist.* (1988) 198 Cal.App.3d 576, 580 [declining to impose sanctions where omission was not of such grave nature that justice could not be done without the documents].)

We have resolved the issues presented in this appeal without reference to the omitted exhibits. Van Der Veer initially requested that the record be augmented to include only three of the omitted exhibits and, ultimately, none of the omitted exhibits was more than minimally relevant to the resolution of the issues raised on appeal. (*Huschke v. Slater* (2008) 168 Cal.App.4th 1153, 1162 ["To be sure, not every violation of a procedural rule is

properly sanctionable, as some may be . . . relatively inconsequential"].)  We therefore decline to impose sanctions in this case.

**DISPOSITION**

The order is affirmed.  Van Der Veer is awarded her costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ADAMS, J.

We concur:

EDMON, P. J.

LAVIN, J.